UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Thomas Cook; Megan Dresch; Laura Galaburda; Jack Glover; David Hall; Monica Hill; Jenny Lynn Kopfstein; Jennifer McGinn; Justin Peacock; James E. Pietrangelo II; Derek Sparks; Stacy Vasquez, <br><br>          Plaintiffs, <br><br>          v. <br><br> Donald H. Rumsfeld, Secretary of Defense; Michael Chertoff, Secretary of Homeland Security; United States of America, <br>          Defendants. | Civil Action No. 04-12546 GAO <br><br> **Oral Argument Requested** |

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Jonathan A. Shapiro (BBO #567838)
Maura T. Healey (BBO #640856)
Matthew A. Stowe (BBO #650473)
Louis W. Tompros (BBO #657791)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000
(617) 526-5000 (Fax)

Sharra E. Greer
Kathi S. Westcott
Sharon E. Debbage Alexander
SERVICEMEMBERS LEGAL DEFENSE NETWORK
P.O. Box 65301
Washington, DC  20035
(202) 328-3244
(202) 797-1635 (Fax)

Stuart F. Delery
Josh Goldfoot
Alison J. Nathan
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2445 M Street NW
Washington, DC  20037
(202) 663-6000
(202) 663-6363 (Fax)

March 28, 2005

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

Preliminary Statement ................................................................................................. 1

Argument .................................................................................................................... 4

I.    Neither Superceded Precedent nor "Deference" Is Grounds for Dismissal. ...................... 4

    A.    Pre-*Lawrence* Precedent Upholding Section 654 Provides No Basis To Dismiss this Case. ................................................................................... 5

    B.    The Doctrine of Military Deference Neither Strips Service Members of Their Constitutional Rights nor Eliminates the Need for Judicial Review. ..................... 7

    C.    Defendants Disregard the Rule 12(b)(6) Standard of Review. ............................ 12

II.    The Complaint States Claims for Violations of Due Process Liberty Interests, Equal Protection, and the First Amendment. ................................................................. 13

    A.    Section 654's Infringement of Due Process Rights Is Not Tailored – Narrowly or Otherwise – to Any Legitimate State Interest. ................................ 13

        1.    The Allegations of the Complaint State a Claim Under Any Standard of Constitutional Scrutiny. ................................................. 13

        2.    *Lawrence* Requires a "Searching Constitutional Inquiry" into the Fit Between Section 654's Restriction and the Proffered Government Interests. ..................................................................... 19

    B.    Plaintiffs' Equal Protection Claim Is Supported by Factual Allegations. ............. 24

    C.    Plaintiffs State a Claim for Violation of the First Amendment. ........................... 26

        1.    "Don't Ask, Don't Tell" Is Presumptively Invalid Under the First Amendment. ............................................................................ 27

        2.    Defendants Cannot Avoid the First Amendment by Claiming that "Don't Ask, Don't Tell" Does Not Regulate Speech. .............................. 30

III.    Deference Is Inappropriate Because, as the Complaint Alleges, the Congressional Judgments Behind Section 654 Lack Support. ................................................. 31

Conclusion .................................................................................................................. 34

Request for Oral Argument ........................................................................................... 34

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Able v. United States*,
  88 F.3d 1280 (2d Cir. 1996), *remanded to* 968 F. Supp. 850 (E.D.N.Y. 1997),
  *rev'd* 155 F.3d 628 (2d Cir. 1998) .........................................................................5, 6

*Asociacion de Educacion Privada de P.R., Inc. v. Echevarria-Vargas*,
  385 F.3d 81 (1st Cir. 2004)....................................................................................29

*Ben-Shalom v. Marsh*,
  881 F.2d 454 (7th Cir. 1989) ...................................................................................7

*Bowers v. Hardwick*,
  478 U.S. 186 (1986)..........................................................................................*passim*

*Brown v. Glines*,
  444 U.S. 348 (1980)...........................................................................................8, 26

*Cammermeyer v. Aspin*,
  850 F. Supp. 910 (W.D. Wash. 1994) ....................................................................14

*Chappell v. Wallace*,
  462 U.S. 296 (1983)..................................................................................................7

*Charles v. Rice*,
  28 F.3d 1312 (1st Cir. 1994)..................................................................................31

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985)..................................................................................15, 16, 17

*City of Los Angeles v. Preferred Communications, Inc.*,
  476 U.S. 488 (1986)...............................................................................................29

*Comfort ex rel. Neumyer v. Lynn Sch. Comm.*,
  283 F. Supp. 2d 328 (D. Mass. 2003) ....................................................................14

*Dawson v. Delaware*,
  503 U.S. 159 (1992)...............................................................................................31

*Dennis v. United States*,
  341 U.S. 494 (1961)...............................................................................................31

*Educadores Puertorriquenos en Accion v. Hernandez*,
  367 F.3d 61 (1st Cir. 2004)....................................................................................12

*Eisenstadt v. Baird*,
  405 U.S. 438 (1972)...............................................................................................21

*Elzie v. Aspin*,
    897 F. Supp. 1 (D.D.C. 1995) .................................................................................27

*Fitzgerald v. Racing Ass'n*,
    539 U.S. 103 (2003) .............................................................................................22

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*,
    527 U.S. 627 (1999) .............................................................................................33

*Forum for Academic & Institutional Rights v. Rumsfeld*,
    390 F.3d 219 (3d Cir. 2004) .................................................................................10

*Frontiero v. Richardson*,
    411 U.S. 677 (1973) .............................................................................................10

*Giboney v. Empire Storage & Ice Co.*,
    336 U.S. 490 (1949) .............................................................................................31

*Gilligan v. Morgan*,
    413 U.S. 1 (1973) ....................................................................................... 31-32, 33

*Goldman v. Weinberger*,
    475 U.S. 503 (1986) ....................................................................................9, 11, 33

*Greer v. Spock*,
    424 U.S. 828 (1976) .........................................................................................26, 33

*Griswold v. Connecticut*,
    381 U.S. 479 (1965) .............................................................................................21

*Hamdan v. Rumsfeld*,
    344 F. Supp. 2d 152 (D.D.C. 2004) .......................................................................9

*Hamdi v. Rumsfeld*,
    124 S. Ct. 2633 (2004) ...........................................................................................9

*Heller v. Doe*,
    509 U.S. 312 (1993) .............................................................................................24

*Hoffman v. United States*,
    No. 97-1258, 1997 WL 136417 (E.D. Pa. Mar. 24, 1997) ......................................5

*Holmes v. Cal. Army Nat'l Guard*,
    124 F.3d 1126 (9th Cir. 1997) .....................................................................5, 6, 29

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*,
    515 U.S. 557 (1995) .............................................................................................27

*In re WebSecure, Inc. Sec. Litig.*,
    182 F.R.D. 364 (D. Mass. 1998) ................................................................. 12

*Kimel v. Fla. Bd. of Regents*,
    528 U.S. 62 (2000) ..................................................................................... 33

*Lamprecht v. FCC*,
    958 F.2d 382 (D.C. Cir. 1992) ..................................................................... 8

*Lawrence v. Texas*,
    539 U.S. 558 (2003) ............................................................................ *passim*

*Lee v. Weisman*,
    506 U.S. 577 (1992) .................................................................................. 28

*Palmore v. Sidoti*,
    466 U.S. 429 (1984) .................................................................................. 17

*Parisi v. Davidson*,
    405 U.S. 34 (1972) .................................................................................... 10

*Parker v. Levy*,
    417 U.S. 733 (1974) ................................................................................ 7, 9

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983) .................................................................................... 26

*Philips v. Perry*,
    106 F.3d 1420 (9th Cir. 1997) ................................................................. 5, 6

*Planned Parenthood v. Casey*,
    505 U.S. 833 (1992) ............................................................... 13, 21, 22, 23

*Plyler v. Doe*,
    457 U.S. 202 (1982) ............................................................................ 22, 23

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) .................................................................................. 26

*Richenberg v. Perry*,
    909 F. Supp. 1303 (D. Neb. 1995), *aff'd*, 97 F.3d 256 (8th Cir. 1996) ...... 6

*Richenberg v. Perry*,
    97 F.3d 256 (8th Cir. 1996) .................................................................... 5, 6

*Rodi v. S. New Eng. Sch. of Law*,
    389 F.3d 5 (1st Cir. 2004) .................................................................. 12, 19

*Roe v. Wade,*
   410 U.S. 113 (1973) ................................................................................21

*Romer v. Evans,*
   517 U.S. 620 (1996) ..............................................................15, 17, 24, 25, 32

*Rostker v. Goldberg,*
   453 U.S. 57 (1981) ..........................................................................*passim*

*Schacht v. United States,*
   398 U.S. 58 (1970) ................................................................................28

*Schlesinger v. Ballard,*
   419 U.S. 498 (1975) ................................................................................8

*Schowengerdt v. United States,*
   944 F.2d 483 (9th Cir. 1991) ....................................................................6

*Simon & Schuster v. Crime Victims Bd.,*
   502 U.S. 105 (1991) ..............................................................................26

*Swierkiewicz v. Sorema N. A.,*
   534 U.S. 506 (2002) ..........................................................................12, 16

*Thomasson v. Perry,*
   80 F.3d 915 (4th Cir. 1996) ....................................................................5, 6

*Thorne v. U.S. Dep't of Defense,*
   945 F. Supp. 924 (E.D. Va. 1996) ..............................................................29

*Trop v. Dulles,*
   356 U.S. 86 (1958) ................................................................................11

*Troxel v. Granville,*
   530 U.S. 57 (2000) ..........................................................................13, 23

*United States Dep't of Agric. v. Moreno,*
   413 U.S. 528 (1973) ..............................................................................15

*United States ex rel. Toth v. Quarles,*
   350 U.S. 11 (1955) ................................................................................9

*United States v. Barber,*
   ARMY 20000413 (A. Ct. Crim. App. Oct. 7, 2004) ............................................20

*United States v. Bullock,*
   ARMY 20030534 (A. Ct. Crim. App. Nov. 30, 2004) ..........................................20

*United States v. Marcum*,
   60 M.J. 198 (C.A.A.F. 2004) ..........................................................................*passim*

*United States v. O'Brien*,
   391 U.S. 367 (1968) ............................................................................................11, 28

*United States v. Robel*,
   389 U.S. 258 (1967) ..............................................................................................8, 11

*Washington v. Glucksberg*,
   521 U.S. 702 (1997) ...................................................................................................22

*Wayte v. United States*,
   470 U.S. 598 (1985) ...................................................................................................30

*Weiss v. United States*,
   510 U.S. 163 (1994) .....................................................................................................8

*Wessmann v. Gittens*,
   160 F.3d 790 (1st Cir. 1998) .......................................................................................14

*West Virginia v. Barnette*,
   319 U.S. 624 (1943) ...................................................................................................28

*Wisconsin v. Mitchell*,
   508 U.S. 476 (1993) .............................................................................................30, 31

<u>Federal Statutes, Regulations, and Legislative History</u>

10 U.S.C. § 654.............................................................................................................*passim*

10 U.S.C. § 654(a) .............................................................................................................33

10 U.S.C. § 654(a)(7) .........................................................................................................15

10 U.S.C. § 654(a)(9) .........................................................................................................28

10 U.S.C. § 654(a)(10) .................................................................................................27, 28

10 U.S.C. § 654(a)(11) .......................................................................................................27

10 U.S.C. § 654(a)(15) .......................................................................................................17

10 U.S.C. § 654(b)(2) ...................................................................................................27, 29

10 U.S.C. § 654(f)(1) .........................................................................................................29

Dep't of Defense Instruction 1332.40, *Separation Procedures for Regular
   and Commissioned Officers* .......................................................................................27

S. Rep. No. 103-112 (1993) ................................................................................................7, 18

Other Authorities

Briefs

Appellant's Opening Br., *Philips v. Perry*, 106 F.3d 1420 (9th Cir. 1997)
(No. 95-35293), *available at* 1995 WL 17147384 .....................................................6

Resp't's Br. at 30, *Lawrence v. Texas*, 539 U.S. 558 (2003) (No. 02-102),
*available at* 2003 WL 470184 ......................................................................................22

Periodical and Other Secondary Materials

Tobias Barrington Wolff, *Political Representation and Accountability
Under Don't Ask, Don't Tell*, 89 Iowa L. Rev. 1633 (2004) ......................................28

John Files, *Study Says Discharges Continue Under "Don't Ask, Don't
Tell,"* N.Y. Times, Mar. 24, 2004, at A18 ................................................................16

Ariana Eunjung Cha & Renae Merle, *Line Increasingly Blurred Between
Soldiers and Civilian Contractors*, Wash. Post, May 13, 2004, at A1 ....................16

Sarah Lyall, *Britain's Navy Is Encouraging Gays and Lesbians to Enlist*,
N.Y. Times (Int'l), Feb. 21, 2005 ..............................................................................16

Gordon Lubold, *Band of Sisters; Army 'Lionesses' Hit Streets with
Marines on Combat Ops*, Marine Corps Times, Aug. 9, 2004, at 14 .......................19

## PRELIMINARY STATEMENT

Plaintiffs are twelve citizens who served in the United States Army, Navy, Air Force, or Coast Guard.  (Compl. ¶ 1.)  These men and women served our country honorably in Iraq, Kuwait, Saudi Arabia, and other parts of the world in support of U.S. military operations, including Operation Desert Storm, Operation Enduring Freedom, and Operation Iraqi Freedom.  (*See, e.g.*, *id.* ¶¶ 64, 91, 112, 133, 135, 145.)  Despite their distinguished service, each Plaintiff was discharged from the military between 2002 and 2004 under 10 U.S.C. § 654 and implementing regulations – which together are colloquially referred to as "Don't Ask, Don't Tell."[1]  (*See id.* ¶¶ 63-153.)

Plaintiffs challenge the constitutionality of section 654 and the implementing regulations, both facially and as applied to them.  The Complaint details Plaintiffs' service records and how they came to be discharged under section 654 in violation of (1) their due process rights to have private, intimate relationships without interference from the government, (2) the equal protection of the law, and (3) their First Amendment rights to free speech.  The Complaint also includes detailed allegations about the military's experience of eleven years under "Don't Ask, Don't Tell." Together, these allegations – which must be assumed true for this motion – belie any argument that gay or lesbian service members pose a risk to military morale, good order, discipline, or unit cohesion.  The allegations demonstrate that section 654 is not sufficiently tailored to *any* appropriate government interest.  Consequently, the Complaint states valid claims for violation of Plaintiffs' constitutional rights.

Defendants' arguments to the contrary must be rejected for several reasons.[2]

---

[1]    The relevant Department of Defense and military implementing regulations are set out in the Complaint. (Compl. ¶¶ 41-42.)  The arguments in this memorandum apply with equal force to the regulations implementing section 654.

[2]    Michael Chertoff, Secretary of Homeland Security, is automatically substituted as a defendant for his predecessor Tom Ridge, pursuant to Fed. R. Civ. P. 25(d)(1).

*First*, Defendants acknowledge that the Complaint could only be dismissed if there were "no set of facts" alleged or reasonably inferred from the forty-page Complaint upon which any of the twelve Plaintiffs "would be entitled to relief." (Defs.' Mem. at 9.) Nowhere, however, do Defendants heed that standard; their motion ignores every allegation in the Complaint. For example, the Complaint alleges that during wartime – when military effectiveness is most crucial – the military has delayed or dramatically reduced discharges under section 654. (Compl. ¶ 49.) Defendants ignore this fact, even though the military's documented pattern of allowing gay and lesbian service members to serve openly when it needs personnel for critical operations demonstrates that "Don't Ask, Don't Tell" does not truly further the government's asserted interests in maintaining "order" and "morale" for a heterosexual military, but suggests instead constitutionally impermissible animus as the motivation. Moreover, Defendants *never mention any Plaintiff in their argument*, but instead proceed under the mistaken belief that they can dispose of constitutional challenges without ever considering the conduct by the military that Plaintiffs allege violated the Constitution. This omission is particularly conspicuous because Plaintiffs challenge section 654 both *as applied* and facially.

To take the example of one Plaintiff, Defendants do not even attempt to explain why, if Defendants deem it an "unacceptable risk" to the military for a lesbian to serve openly, the Navy decided to send Plaintiff Jenny Lynn Kopfstein on a six-month mission to the Western Pacific *even after* she told her Command that she is a lesbian. (Compl. ¶ 112-116.) Nor is there any Rule 12(b)(6) defense to the fact that, after Kopfstein completed that mission as an open lesbian, the Navy allowed her to continue her service for another year, promoted her to Lieutenant Junior Grade, and awarded her with a position that would have allowed her to take *command of her ship* in certain situations. And *two* Navy Captains testified during her discharge hearing that she was an excellent officer (not a "risk") who should continue to serve as a Naval Officer. Crucially, Defendants never

explain how discharging Plaintiff Kopfstein – or any of the other eleven Plaintiffs – actually promoted any military interest.

*Second*, Defendants' attempt to recast these fact-intensive challenges as pure "issues of law" is flatly contradicted by the cases that they cite. Defendants' central argument that the Complaint should be summarily dismissed under "unanimous precedent" upholding section 654 in the 1990s ignores the fact that *none* of the cases they offer was decided on a motion to dismiss. Those cases were each resolved *on summary judgment* or *following trial*. Plaintiffs here respectfully request the same opportunity to prove their claims on a complete factual record.

*Third*, the legal precedent that Defendants pretend is dispositive of the case is neither controlling nor persuasive authority. Defendants ground their motion in the legal landscape from a decade ago. But the Supreme Court has changed the law, most notably in *Lawrence v. Texas*, 539 U.S. 558 (2003), which overruled *Bowers v. Hardwick*, 478 U.S. 186 (1986) – a case that the Court in *Lawrence* said "was not correct when it was decided." *Lawrence*, 539 U.S. at 578. Every one of the previous section 654 decisions upon which Defendants rely upheld section 654 explicitly or indirectly on the basis of the now-overruled *Bowers* decision or its "not correct" rationale. Defendants' suggestion that *Lawrence* is somehow inapplicable to the military ignores that even the Court of Appeals for the Armed Forces has concluded that *Lawrence* applies to service members and demands a "searching constitutional inquiry." *United States v. Marcum*, 60 M.J. 198, 205 (C.A.A.F. 2004).

*Finally*, Defendants are wrong to suggest that the case should be dismissed on the ground that courts defer under some circumstances to legislative judgment and military imperative. Deference is not abdication. Nor does it confer immunity from lawsuit. Service members, including these Plaintiffs, do not lose constitutional rights when they join the Armed Forces. Although a court should not merely substitute its judgment for that of Congress on military matters,

3

when the government infringes a recognized liberty interest, the judiciary is required to evaluate the validity of the asserted interest and may not exercise "deference" to pretextual "interests," such as those masking animus toward gay and lesbian service members.  For this reason, judicial deference to congressional judgments in military matters has *never* displaced the courts' obligation to determine independently whether a restriction on constitutional rights is sufficiently tailored to serve an appropriate government interest.  Deference operates *within* the constitutional inquiry, not as a replacement for it.

In any event, the Court cannot defer to a congressional or military judgment in the abstract.  Plaintiffs allege, and with discovery will prove, that (1) Congress lacked the evidence to support the judgment supposedly reflected in section 654 but instead was motivated by illegitimate animus towards gay men and lesbians; and (2) the military's actual conduct to the contrary – including promoting openly gay and lesbian officers to positions of authority and high visibility when the military needed their leadership – render the interests that Defendants now assert unworthy of deference to uphold the infringement on Plaintiffs' constitutional rights.  Defendants contend that the Complaint is simply wrong on these points.  But resolving such disputes is the classic purpose of discovery.  Defendants should defend against these and the other allegations they ignore on a full factual record.

## ARGUMENT

## I.    NEITHER SUPERCEDED PRECEDENT NOR "DEFERENCE" IS GROUNDS FOR DISMISSAL.

Like Defendants, we "begin with first principles."  (Defs.' Mem. at 9.)  *First*, Defendants are incorrect that this Court need only "follow the unanimous view" of other circuits concerning the validity of section 654, as those precedents have been displaced by an intervening Supreme Court decision that even the highest military court has ruled requires a "searching" constitutional review.

*Second*, the Constitution applies in the military.  Defendants' chronic requests for "deference" do not alter the quintessential judicial obligation to decide – based on the facts as alleged in the Complaint – whether the infringements on Plaintiffs' constitutional rights are justified because section 654 is sufficiently tailored to further an appropriately weighty government interest.  *Third*, Defendants run afoul of Rule 12(b)(6), as they ignore the allegations of the Complaint and spotlight the need for discovery by introducing still more factual disputes to support what they claim is a purely legal argument.

### A.    Pre-*Lawrence* Precedent Upholding Section 654 Provides No Basis To Dismiss this Case.

Defendants' motion is built on the demonstrably false assertion that this case is simple because all the Court need do is "follow the unanimous views of the courts of appeals" to dismiss the case.  (Defs.' Mem. at 3.)  To the contrary, neither the Supreme Court nor the Court of Appeals for the First Circuit has ever decided whether section 654, facially or as applied to these Plaintiffs, violates the Constitution's due process, equal protection, and First Amendment guarantees.

The motion also is not in any respect supported by the out-of-circuit cases that Defendants oversell as "dispositive."  (Defs.' Mem. at 1-2 & n.1, 9, 18.)  *None* of those cases was disposed of on a motion to dismiss; all were decided after plaintiffs had an opportunity for discovery. [3]

Moreover, the cases that previously upheld section 654 cannot remain good law in their own circuits.  Every one of those cases upheld section 654 on the strength of *Bowers*, which the Supreme Court explicitly overruled in *Lawrence*.  The Court in *Lawrence* held that "*Bowers* was not correct

---

[3]    One case was decided after a four-day trial.  *See Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996), *remanded to* 968 F. Supp. 850 (E.D.N.Y. 1997), *rev'd* 155 F.3d 628 (2d Cir. 1998).  Others were decided on summary judgment.  *See Holmes v. Cal. Army Nat'l Guard*, 124 F.3d 1126, 1127 (9th Cir. 1997); *Philips v. Perry*, 106 F.3d 1420, 1421 (9th Cir. 1997); *Richenberg v. Perry*, 97 F.3d 256, 258 (8th Cir. 1996); *Thomasson v. Perry*, 80 F.3d 915, 921 (4th Cir. 1996).  A district court case, *Hoffman v. United States*, No. 97-1258, 1997 WL 136418 (E.D. Pa. Mar. 24, 1997), was a denial of a preliminary injunction, not a dispositive motion.

5

when it was decided, and it is not correct today.  It ought not to remain binding precedent."

*Lawrence*, 539 U.S. at 578 (overruling *Bowers*'s incorrect holding that moral disapproval of

homosexuality could be a legitimate state interest and that the government could constitutionally

prohibit private, consensual sexual activity).  *Lawrence*, therefore, destroyed the foundation of

Defendants' supposedly "dispositive" cases.  Of the two old section 654 cases that actually

addressed a substantive due process challenge to section 654, both rejected the claim based on the

*Bowers* rationale.[4]  Equal Protection claims were rejected because courts construed the relevant

class seeking protection (gay and lesbian service members) as defined by the conduct (sodomy)

that, prior to *Lawrence*, the government was constitutionally permitted by *Bowers* to criminalize.[5]

Courts declined First Amendment challenges to section 654 because they understood section 654's

vast speech restrictions to be targeted at preventing "homosexual acts," which was permissible

under *Bowers*.[6]  Indeed, Congress itself justified section 654's prohibition on statements of sexual

orientation in part on the fact that, consistent with *Bowers*, the Uniform Code of Military Justice

made sodomy a crime:  "It is appropriate for the armed forces to separate the individual from

military service without waiting until the individual's propensity or intent to violate the UCMJ

---

[4]      *See Holmes*, 124 F.3d at 1136 (9th Cir. 1997) (rejecting substantive due process argument because, under *Schowengerdt v. United States,* 944 F.2d 483 (9th Cir. 1991), any "substantive due process claim . . . was foreclosed by *Bowers*"); *Richenberg v. Perry,* 909 F. Supp. 1303, 1313 (D. Neb. 1995) (rejecting right of privacy claim based on *Schowengerdt* and other cases relying on *Bowers*), *aff'd,* 97 F.3d 256 (8th Cir. 1996).  The other section 654 cases on which Defendants rely did not involve substantive due process challenges.  *See Thomasson*, 80 F.3d at 934 (reviewing "procedural fairness" but not substantive due process); *Able*, 968 F. Supp. at 864 (stating that case did not involve a due process challenge), *rev'd,* 155 F.3d 628 (2d Cir. 1998); Appellant's Opening Br., *Philips v. Perry*, 106 F.3d 1420 (9th Cir. 1997) (No. 95-35293), *available at* 1995 WL 17147384, at *22 (declining to appeal substantive due process claim).

[5]      *See, e.g., Able*, 155 F.3d at 635 (holding that section 654 was not "status-based" because it "targets conduct"); *Thomasson,* 80 F.3d at 928 (relying on fact that section 654 targets persons who engage in acts the military legitimately may proscribe because they lack constitutional protection); *Holmes,* 124 F.3d at 1136 (finding section 654 makes a distinction based on "homosexual conduct"); *Philips*, 106 F.3d at 1426 & n.11 (holding that *Bowers* forecloses "heightened scrutiny" of "government regulation of homosexual conduct"); *Richenberg*, 97 F.3d at 261 (rejecting equal protection claim because the statute "defines 'homosexual'" as those who "commit unacceptable sexual *acts*").

[6]      *See, e.g., Able*, 88 F.3d at 1291 (finding section 654's speech restriction advanced the government's "interest in preventing homosexual acts in the military"); *Thomasson,* 80 F.3d at 929 (finding section 654's speech restriction constitutional because "it is legitimate for Congress to proscribe homosexual acts"); *see also Holmes,* 124 F.3d at 1136 (citing *Thomasson* and other pre-*Lawrence* section 654 cases); *Richenberg*, 97 F.3d at 263 (citing *Thomasson*).  The Court in *Philips* declined to reach the issue.  *See Philips,* 106 F.3d at 1430.

ripens into specific conduct prejudicial to good order and discipline." S. Rep. No. 103-112, at 294 (1993) (citing *Ben-Shalom v. Marsh*, 881 F.2d 454, 464 (7th Cir. 1989), which emphasized that, under *Bowers*, "homosexual conduct may constitutionally be criminalized"). Simply put, now that the Supreme Court has ruled that *Bowers* is "not correct," it also is "not correct" for Defendants to argue that *Bowers*-era caselaw requires dismissal of this lawsuit.

No court has ruled on section 654's constitutionality after *Lawrence*. However, the highest military appellate court has discarded its own past use of *Bowers* and held that *Lawrence* ratcheted up the scrutiny applied to government justifications for penalizing private sexual conduct by service members. *See Marcum*, 60 M.J. at 205 (noting that section 654's enactment "occurred prior to the Supreme Court's constitutional decision and analysis in *Lawrence* and at a time when *Bowers* served as the operative constitutional backdrop").

**B.    The Doctrine of Military Deference Neither Strips Service Members of Their Constitutional Rights nor Eliminates the Need for Judicial Review.**

Defendants argue that (1) section 654 is constitutional because it serves military interests, but that (2) the doctrine of military deference prevents this Court as a matter of law from independently determining whether section 654 serves those interests. In effect, Defendants argue that "deference" precludes meaningful constitutional review and serves as an appropriate basis for a motion to dismiss that does not even pretend to address the allegations of the Complaint. It does not.

Congress is not "free to disregard the Constitution when it acts in the area of military affairs," *Rostker v. Goldberg*, 453 U.S. 57, 67 (1981), and "our citizens in uniform may not be stripped of basic rights simply because they have doffed their civilian clothes," *Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (citation omitted). Thus, "the members of the military are not excluded from the protection granted by the First Amendment," *Parker v. Levy*, 417 U.S. 733, 758

(1974), and "Congress, of course, is subject to the requirements of the Due Process Clause [even] when legislating in the area of military affairs," *Weiss v. United States*, 510 U.S. 163, 176 (1994).

Defendants overreach by arguing that "deference" exempts military-related statutes from serious constitutional review. The Supreme Court has made clear that the Constitution requires the *same* scrutiny of military statutes as it requires of civilian statutes and has rejected attempts to dilute the standard of constitutional review. In *Rostker*, which involved a claim that a draft registration statute improperly discriminated based on gender, the Court applied the *same* level of scrutiny that it would have applied in the civilian context, because "[s]imply labeling the legislative decision 'military' on the one hand or 'gender-based' on the other does not automatically guide a court to the correct congressional result." 453 U.S. at 70. Even in the military context, the Court's task was to "decide whether Congress . . . transgressed an explicit guarantee of individual rights which limits [Congressional] authority." *Id.* at 70; *see also id.* at 71 (explaining that *Schlesinger v. Ballard*, 419 U.S. 498 (1975), "did not purport to apply a different equal protection test because of the military context"). Similarly, the Court has held military authorities to the *same* First Amendment standards as civilian authorities. *See, e.g.*, *Brown v. Glines*, 444 U.S. 348, 355 (1980) (applying usual First Amendment analysis to speech restriction by Air Force).

"Deference," therefore, does not mean "abdication." *Rostker*, 453 U.S. at 67.[7] In *United States v. Robel*, 389 U.S. 258, 263 (1967), the Supreme Court warned that "the phrase 'war power' cannot be invoked as a talismanic incantation to support any exercise of congressional power which can be brought within its ambit." The Court has emphasized that there is a clear difference between a court substituting its judgment for that of the political branches and a court fulfilling the

---

[7]    As then-Judge Thomas observed in a non-military context: "We know of no support . . . for the proposition that if the constitutionality of a statute depends in part on the existence of certain facts, a court may not review a legislature's judgment that the facts exist. If a legislature could make a statute constitutional simply by 'finding' that black is white or freedom, slavery, judicial review would be an elaborate farce." *Lamprecht v. FCC*, 958 F.2d 382, 392 n.2 (D.C. Cir. 1992) (Thomas, J.).

judiciary's own responsibility carefully to evaluate restrictions on constitutional rights. And recently, the Supreme Court and other federal courts have undertaken careful constitutional review, even in the face of arguments of Congressional, Presidential, and military deference, *see, e.g.*, *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2651-52 (2004), and even where, unlike here, the plaintiffs were *non-citizens* accused of terrorism, *see Hamdan v. Rumsfeld*, 344 F. Supp. 2d 152, 161 (D.D.C. 2004).

Crucially for purposes of this case, deference does not excuse Defendants from demonstrating how section 654 adequately serves a legitimate military interest. Generally speaking, the First and Fifth Amendments measure restrictions on constitutional rights against (1) the importance of the governmental interest served by the restriction, and (2) the extent to which the restriction actually serves those interests, without being overbroad or underinclusive. When the government interest is a military interest, the government can prove that interest is "compelling" (or "important," as may be required) by showing that Congress or military authorities made an informed "judgment" that the interest was important. *See Goldman v. Weinberger,* 475 U.S. 503, 507 (1986) ("[C]ourts must give great deference to the professional judgment of military authorities *concerning the relative importance of a particular military interest.*") (emphasis added); *Rostker*, 453 U.S. at 70. "[I]t is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise," *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 17 (1955), and when military interests require it, "the rights of [citizens] in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty," *Parker*, 417 U.S. at 744 (internal quotation marks omitted). But the doctrine of military deference does not excuse the government from showing the extent to which its restriction on constitutional rights is actually tailored to *serve* even the most important government interests. Defendants are not free simply to incant a highly generalized military interest (such as "unit cohesion") and demand deference to their

claim that any number of restrictions on service members' rights – no matter how broad, restrictive, illogically related, or inequitably applied – supports that interest. To the contrary, the courts must evaluate whether restrictions on constitutional rights actually serve the "military interests" claimed by the government.

The Third Circuit recently rejected the government's appeal for a relaxed (or "deferential") constitutional standard, because "while the Government emphasizes that the Nation's military is at stake, invoking the importance of a well-trained military is not a substitute for demonstrating that there is an important governmental interest" justifying the challenged statute. *Forum for Academic & Institutional Rights v. Rumsfeld,* 390 F.3d 219, 245 (3d Cir. 2004) (holding that law schools could not be required to host military recruiters on campus). This close judicial scrutiny followed in the footsteps of Supreme Court cases that had conducted the same analysis. For example, in *Parisi v. Davidson,* 405 U.S. 34 (1972), a service member petitioned for habeas corpus, seeking discharge from the Army on the grounds that he was a conscientious objector. *Id.* at 35. After the service member filed his petition, the Army began criminal proceedings against him for refusing to board an airplane to Vietnam. *Id.* at 36. The Supreme Court held that the district court could consider the habeas petition before the criminal prosecution was complete, and that doing so was "not inconsistent with the need to maintain order and discipline in the military," because "if the conscientious objector claim is valid, the Army can have no interest in punishing him for disobedience of an unlawful order. If the conscientious objector claim is invalid, then the Army can, of course, prosecute the petitioner for his alleged disobedience of a lawful order." *Id.* at 44 n.13. Thus, the Court conducted an independent analysis of whether the restriction on constitutional rights was truly consistent with military interests. *Id.; see also Frontiero v. Richardson*, 411 U.S. 677, 689 (1973) (federal statutes regulating military benefits held unconstitutional because they discriminated against women and "serve[d] no purpose other than mere 'administrative

10

convenience'"); *Robel*, 389 U.S. at 266-67 (federal statute barring Communists from working at defense facilities held unconstitutional because the "statute casts its net across a broad range of associational activities"); *Trop v. Dulles*, 356 U.S. 86, 107 (1958) (Brennan, J., concurring) (stating that although "Congress is authorized to deal with the evil of [military] desertion, we must yet inquire whether expatriation is a means reasonably calculated to achieve this legitimate end and thereby designed to further the ultimate congressional objective – the successful waging of war").

The courts conduct an independent analysis regardless of the ultimate decision as to the constitutionality of a statute or regulation. Thus, in *Rostker,* the Court did not uphold the challenged gender classification in the administration of the draft as "closely related to Congress' purpose in authorizing registration" until *after subjecting it to constitutional scrutiny*, because the purpose of a draft was to raise combat troops and it was undisputed that women could not become combat troops. *Rostker*, 453 U.S. at 79. But the Court in *Rostker* made clear that, although the military has an interest in registering only men for the draft, no amount of deference would permit Congress to establish an "all-black or all-white, or an all-Catholic or all-Lutheran, or an all-Republican or all-Democratic registration" because no military interest could support such distinctions. *Id.* at 78. Similarly, in *Goldman*, 457 U.S. at 507, the Court examined "whether military needs justify a particular restriction on religiously motivated conduct." *See also United States v. O'Brien*, 391 U.S. 367, 380 (1968) (finding "legitimate and substantial" relationship between military interests and law prohibiting destruction of draft certificate).

Given the allegations in the Complaint, there is no basis upon which to dismiss this case at the pleading stage. To do that, the Court would have to conclude that it would be impossible for Plaintiffs to demonstrate, on any set of facts consistent with the Complaint, that the restrictions of their constitutional rights were broader than necessary to serve legitimate military interests. The allegations in the Complaint foreclose that conclusion.

11

### C.    Defendants Disregard the Rule 12(b)(6) Standard of Review.

The motion to dismiss must be denied because Defendants have not met their heavy burden under Rule 12(b)(6).  The military's claimed entitlement to deference does not change the rule that the Complaint could be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61, 66 (1st Cir. 2004) (internal quotation marks omitted).  The "task is not to decide whether the plaintiff ultimately will prevail but, rather, whether he is entitled to undertake discovery in furtherance of the pleaded claim."  *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 13 (1st Cir. 2004).

Defendants ignore the Complaint's detailed allegations concerning the service records and experiences of each of Plaintiffs as well as the as-applied and facial operation of section 654. *Compare In re WebSecure, Inc. Sec. Litig.*, 182 F.R.D. 364, 365 (D. Mass. 1998) ("In considering a motion to dismiss for failure to state a claim, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the nonmoving party.").  Under Rule 8's liberal notice pleading requirements, Plaintiffs' allegations are sufficient to state claims for deprivation of their constitutional rights because they give Defendants notice of the nature of Plaintiffs' claims.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514-15 (2002) (holding that a complaint survives a motion to dismiss even where "based on conclusory allegations of discrimination").  Here, Defendants confirm the need for discovery by interjecting obviously fact-laden defenses that are *never* appropriately considered on a motion under Rule 12(b)(6).  (*See, e.g.*, Defs.' Mem. at 10 (arguing that Plaintiffs' allegations are "manifestly incorrect"); *id.* at 27 (relying on factual propositions not alleged in the Complaint).)

II.    **THE COMPLAINT STATES CLAIMS FOR VIOLATIONS OF DUE PROCESS LIBERTY INTERESTS, EQUAL PROTECTION, AND THE FIRST AMENDMENT.**

A.    **Section 654's Infringement of Due Process Rights Is Not Tailored – Narrowly or Otherwise – to Any Legitimate State Interest.**

It is well established that the Due Process Clause gives constitutional protection to the liberty interest in making personal choices concerning individual dignity and personal relationships. *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion); *Planned Parenthood v. Casey*, 505 U.S. 833, 848-49 (1992).  In *Lawrence v. Texas*, the Court confirmed that a "due process right to demand respect for conduct protected by the substantive guarantee of liberty" gave the gay petitioners the "full right to engage in their conduct" – private, consensual, adult sexual activity – "without intervention of the government."  *Lawrence*, 539 U.S. at 575, 578.

Plaintiffs pled that they were discharged from the Armed Forces either for exercising that due process right or for indicating through word or action that they had a "propensity" to exercise that right.  Plaintiffs pled – and Defendants do not dispute – that these discharges infringed Plaintiffs' constitutionally protected liberty interests.  Plaintiffs also pled that those infringements were not "necessary, narrowly tailored, or even rationally related" to any "compelling interest, important interest, or even legitimate governmental interest."  (Compl. ¶ 160.)  Given these allegations, the Complaint states a claim for violation of Plaintiffs' due process rights.

1.    **The Allegations of the Complaint State a Claim Under Any Standard of Constitutional Scrutiny.**

Defendants misconstrue *Lawrence* by asserting that the "right to liberty under the Due Process Clause" that the Court recognized for gay people on equal terms as for married and unmarried heterosexuals had somehow fallen in stature, such that it is now less valuable than a "fundamental right."  (Defs.' Mem. at 20.)  As explained below, that reading cannot be squared with what *Lawrence* said, *see infra* at 20-23, nor can Defendants' corollary position that *Lawrence*

13

requires only the least searching form of judicial review.  Ultimately, however, these and

Defendants' other efforts to have the Court follow Justice Scalia's *dissent* in *Lawrence* and pigeon-

hole the majority's analysis as minimal "rational basis" scrutiny are *irrelevant* to the motion to

dismiss because section 654 (on its face, and as applied against these Plaintiffs) cannot survive any

level of constitutional scrutiny.  That is, even if Defendants were correct (and they are not) that

section 654 need only pass rational basis scrutiny, the detailed allegations in the Complaint

demonstrate that section 654 does not even survive rational basis review.  (*See* Compl. ¶¶ 43-52,

160.)

The Court cannot analyze whether section 654's infringement of Plaintiffs' liberty interests

is rationally related to a legitimate state interest (or narrowly tailored to serve a compelling state

interest) on a motion to dismiss, because there are factual disputes as to *both* the nature and extent

of the infringement and the legitimacy of the supposed "interests" that Defendants claim justify

their discrimination.  This "nexus" question is "ultimately [a] question[] of law" but "each case

turns on the peculiarities of its own facts" and requires a "fact-sensitive inquiry."  *Comfort ex rel.*

*Neumyer v. Lynn Sch. Comm.*, 283 F. Supp. 2d 328, 369 (D. Mass. 2003).  As the First Circuit held

in examining a school's race-based admissions policy:

> [W]e must look beyond the School Committee's recital of the
> theoretical benefits of diversity and inquire whether the concrete
> workings of the Policy merit constitutional sanction. Only by such
> particularized attention can we ascertain whether the Policy bears any
> necessary relation to the noble ends it espouses. In short, the devil is
> in the details.

*Wessmann v. Gittens*, 160 F.3d 790, 797-98 (1st Cir. 1998).  A motion to dismiss is not the time for

such a "fact-sensitive inquiry," especially where, as here, Plaintiffs pled facts that show no credible,

rational connection between the law and its supposed justifications, but instead that section 654 is

premised on anti-gay animus.  "Regulations based solely on prejudice are irrational as a matter of

law and serve no legitimate governmental purpose."  *Cammermeyer v. Aspin*, 850 F. Supp. 910, 928

14

(W.D. Wash. 1994) (ordering the reinstatement of a lesbian discharged from the Washington State National Guard). When a law serves illegitimate purposes such as animus, the deference normally accorded legislative decisions evaporates and a "more searching form of rational basis review" applies to any other reasons offered for the law. This requires the Court to look more skeptically at other proffered justifications and whether they are "substantiated." *See Romer v. Evans*, 517 U.S. 620, 632 (1996); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446-47; *United States Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973).

Defendants conspicuously steer clear of the allegations in the Complaint that there is no relationship between section 654 and any legitimate interest. Instead, Defendants rely on selective characterization of Congressional testimony supplemented by Defendants' own bald conclusions that section 654 is "amply justif[ied]." (*See* Defs.' Mem. at 24-27.) This is not only a premature argument on the merits, but the "interests" that Defendants contend justify section 654 ("unit cohesion" and "sexual tension") actually highlight the irrationality of the statute.

a) **Defendants' Asserted Interest in "Unit Cohesion" Is a Proxy for Impermissible Anti-Gay Animus.**

Defendants identify unit cohesion – "the bonds of trust among individual service members" – as a constitutionally adequate justification for section 654. (Defs.' Mem. at 23 (quoting 10 U.S.C. § 654(a)(7)).) It is, however, immediately apparent from Defendants' own motion papers that the unit cohesion rationale merely channels the presumed animus of heterosexual service members: exclusion of gay men and lesbians from service is necessary because some heterosexual service members do not like being in close proximity to gay people. Defendants' assertion of unit cohesion as the justification for the restriction by section 654 on Plaintiffs' constitutionally protected liberty interests therefore suffers from two fatal flaws.

*First*, Plaintiffs have alleged *as fact* that the presence of gay men and lesbians in the Armed Forces does not pose any risk to unit cohesion, military morale, good order, or discipline. (*See*

15

Compl. ¶ 44.) That allegation *alone* requires denial of the motion to dismiss. *See Swierkiewicz*, 534 U.S. at 514-15. But the Complaint goes further. It alleges that instead of enforcing section 654 during wartime – when the need for "unit cohesion" and "morale" are the greatest – the military has relaxed or altogether ignored its ban on gay and lesbian service members, postponing discharges and promoting openly gay officers until those gay personnel were no longer needed. (*See* Compl. ¶ 49.) Moreover, the military professionals who served with Plaintiffs concluded that their "presence" contributed to – and was not in any sense a "threat" or "risk" to – the military and our national defense:[8]

- Plaintiff Kopfstein revealed her sexual orientation without harm to her job performance or the unit cohesion or morale of her fellow service members. During her twenty-two months of service as an open lesbian, Kopfstein received several awards and honors. (Compl. ¶¶ 112-14.)

- Plaintiff Pietrangelo successfully created an operational law office for the 42nd Infantry Division during the period of his continued service after admitting to his commander that he is gay. (Compl. ¶¶ 138-39.)

- Plaintiff Glover was selected for an ROTC leadership position – Operations Group Commander – during the course of an investigation into his sexual orientation. (Compl. ¶¶ 82, 86-87.)

That the military knowingly contravenes its own policy (when it needs gays and lesbians to win wars) makes it, at the very least, "difficult to believe" that its "interest" in an effective military justifies blanket exclusion on gays and lesbians (when it needs to win lawsuits). *See Cleburne*, 473 U.S. at 449. Moreover, in Iraq and elsewhere United States service members have served alongside openly gay members of the armed forces of the United Kingdom and Australia – again, without any harm whatsoever to morale, good order, discipline, or unit cohesion. (Compl. at ¶ 48.)

---

[8]    Discovery will demonstrate that the mere presence of Plaintiffs in the military did not pose any threat whatsoever – and certainly not a threat of the magnitude that Defendants claim entitles them to violate the Constitution. *See, e.g.*, Sarah Lyall, *Britain's Navy Is Encouraging Gays and Lesbians to Enlist*, N.Y. Times (Int'l), Feb. 21, 2005; Ariana Eunjung Cha & Renae Merle, *Line Increasingly Blurred Between Soldiers and Civilian Contractors*, Wash. Post, May 13, 2004, at A1; John Files, *Study Says Discharges Continue Under 'Don't Ask, Don't Tell,'* N.Y. Times, Mar. 24, 2004, at A18.

*Second*, the Complaint alleges that the interest animating section 654 is animus against gay people (*see* Compl. ¶ 178), and this fact can also be inferred from the way in which "Don't Ask, Don't Tell" has operated in practice. It is now well established that animus cannot be a legitimate interest to justify infringement on due process rights. "[A] bare . . . desire to harm a politically unpopular group cannot constitute a *legitimate* governmental interest." *Id.*; *see also Lawrence*, 539 U.S. at 574; *id.* at 582 (O'Connor, J., concurring). It is equally well established that *appeasing the animus of others* cannot be a legitimate interest. "Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect." *Palmore v. Sidoti*, 466 U.S. 429, 433 (1984); *see also Romer*, 517 U.S. at 635 (holding that "respect" for "landlords or employers who have personal or religious objections to homosexuality" was not a legitimate state interest); *Cleburne*, 473 U.S. at 448-49 (holding that the biases of property owners did not provide a legitimate justification for allowing rejection of a zoning permit for a home for mentally retarded individuals). The Congressional "finding" that the mere "presence" of "persons who demonstrate a propensity or intent to engage in homosexual acts" in the Armed Forces harms military effectiveness, 10 U.S.C. § 654(a)(15), reflects this private animus.

b) **Defendants Cannot Sustain a Motion to Dismiss with Unsupported Factual Allegations of "Sexual Tension."**

Defendants elaborate upon their "unit cohesion" rationale by claiming that the presence of openly gay service members presents a risk of "sexual tension" that, in turn, poses a risk to unit cohesion. (See Defs.' Mem. at 26.) According to Defendants, if openly gay men and lesbians are not excluded from military service, they might be attracted to one another, thereby creating sexual tension within a unit and undermining the "bonds of trust" necessary for effective military operation.

Significantly, Congress did not consider, and certainly did not endorse, the "sexual tension" theory that Defendants now advance as central to the unit cohesion justification for section 654. To

the contrary, congressional testimony by military and defense department officials in support of

section 654 focused almost exclusively on the theory that "exposing" heterosexual service members

to "known homosexuals" would harm "unit cohesion."[9]  Indeed, the Armed Services Committee

itself expressly stated that the justification for section 654 was to respect the desire of some

heterosexual service members not to "share their personal living spaces" with gay colleagues.

S. Rep. 103-112, at 281 (1993).  Defendants offer no explanation for the clear tension between this

justification for the policy and their simultaneous claim that gays and lesbians are permitted to serve

so long as they do not engage in homosexual conduct.  If reduction in sexual tension were genuinely

the justification, the policy as currently defended is patently irrational.

Even if Defendants could justify section 654 with rationales that had nothing to do with its

adoption, they cannot do so on a motion to dismiss for the same reasons, and based on the same

allegations, as detailed in the preceding section.  The Complaint must be read in a light most

favorable to Plaintiffs, and Plaintiffs pled that the presence of gay men, lesbians, and bisexuals in

the Armed Forces does not harm unit cohesion.  (Compl. ¶ 48.)  In particular, several of these

Plaintiffs served with distinction *after* they were known to be gay with no negative effect on unit

morale.  Moreover, the experience of the Armed Forces with openly gay civilian contractors and

allied forces belies the "sexual tension" theory.  (*Id.*)

Defendants further disregard Rule 12(b)(6) by basing the "sexual tension" theory on the

unsupported *factual* assertion that heterosexual service members are not "called upon to share

intimate living arrangements with individuals to whom they may be sexually attracted."  (Defs.'

Mem. at 27.)  Defendants' premature factual defenses have been flat-out contradicted by reports in

---

[9]    *See, e.g.,* S. Rep. 103-112, at 280 (testimony of Lieutenant General Calvin Waller, U.S. Army (Ret.), that "[h]aving a casual encounter with an individual who is openly homosexual is one thing. . . . [H]aving to be exposed to the same individual on a 24 hour basis, day in and day out, is 'a horse of another color.'"); *id.* at 316 (Additional views of Mr. Kennedy) (testimony of Major Kathleen Bergeron, U.S. Marine Corps, that she personally would be uncomfortable with her children "being around known homosexuals").

the military press that today in Iraq men and women do, in fact, share these very "living arrangements." *See* Gordon Lubold, *Band of Sisters: Army 'Lionesses' Hit Streets with Marines on Combat Ops*, Marine Corps Times, Aug. 9, 2004, at 14 (noting that male soldiers today are "more used to seeing women in their barracks, where they sleep, change clothes and watch television together," which commanding officers say is "a nod to unit cohesion that's important if women are going to play a worthwhile role"). But neither newspaper reports nor Defendants' bald factual assertions of "sexual tension" are properly considered on a motion to dismiss. Defendants' assertions merely show why the motion should be denied so that Plaintiffs may "undertake discovery in furtherance of the pleaded claim." *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 13 (1st Cir. 2004).

      2.    **_Lawrence_ Requires a "Searching Constitutional Inquiry" into the Fit Between Section 654's Restriction and the Proffered Government Interests.**

The Complaint states a claim for violation of Plaintiffs' constitutionally protected liberty interests regardless of the level of judicial review applied. The motion also should be denied because *Lawrence* requires closer judicial scrutiny than Defendants urge. Defendants' efforts to minimize *Lawrence* reflect a deep misunderstanding of the Court's decision.

      a)    **Military Personnel Enjoy the Due Process Right Recognized in _Lawrence_.**

Defendants cannot fix section 654's constitutional infirmity by insisting that *Lawrence* has "no bearing" on the regulation of military affairs. (Defs.' Mem. at 2-3.) There is *nothing* in the Supreme Court's opinion limiting its protection to civilians. For this reason, *military courts* have considered and rejected the military's attempt to opt out of *Lawrence*. Last year, the Court of Appeals for the Armed Forces ("CAAF") rejected the very same argument that *Lawrence* did not apply to the military: "the Supreme Court [did not] define the liberty interest in *Lawrence* in a manner that on its face would preclude its application to military members." *United States v.*

*Marcum*, 60 M.J. 198, 206 (C.A.A.F. 2004) (rejecting challenge to the Uniform Code of Military

Justice's criminal sodomy prohibition where the act involved a command subordinate). Because

"[c]onstitutional rights identified by the Supreme Court generally apply to members of the military

unless by text or scope they are plainly inapplicable," CAAF "consider[ed] the application of

*Lawrence* to Appellant's conduct." *Id.* Lower military courts also have applied *Marcum* to set

aside convictions of service members for consensual sodomy.[10]

> b)   ***Lawrence* Requires a Searching Constitutional Inquiry.**

The Supreme Court did not purport to create a "new" constitutional right in *Lawrence*. In

stating that *Bowers* had been wrong when it was decided, the Court made clear that it understood

that *Bowers* had "fail[ed] to appreciate the extent of the liberty at stake," *Lawrence*, 539 U.S. at

567, and held that gay people enjoy "just as heterosexual persons do" the long-established right to

personal autonomy in intimate matters, including protection of the right to engage in private sexual

conduct and enter into same-sex relationships. *Id.* at 574. Defendants want to characterize the right

as "new" in hopes this Court will return to rigid methods of discerning protected liberty interests

that were explicitly rejected in *Lawrence*. *Compare* Defs.' Mem. at 20 *with Lawrence*, 539 U.S. at

572.

Relying upon a string of fundamental rights cases, the *Lawrence* Court confirmed that gay

men and lesbians have the same constitutional rights already afforded to heterosexuals to engage in

intimate adult relationships. *Lawrence* requires close scrutiny of alleged infringements of this

liberty interest; as in past cases scrutinizing other infringements of this liberty interest, the

government must "justify" any "intrusion" into an individual's private life by showing that the

---

[10]     *See United States v. Bullock*, ARMY 20030534 (A. Ct. Crim. App. Nov. 30, 2004) (setting aside conviction for sodomy with different-sex civilian in barracks room under *Marcum* and *Lawrence*), *available at* http://www.sldn.org/binary-data/SLDN_ARTICLES/pdf_file/1961.pdf; *United States v. Barber*, ARMY 20000413 (A. Ct. Crim. App. Oct. 7, 2004) (applying *Marcum* and *Lawrence* to set aside convictions for consensual sodomy in barracks between different-sex soldiers of equivalent rank), *available at* http://www.sldn.org/binary-data/SLDN_ARTICLES/pdf_file/1960.pdf.

intrusion serves an appropriately weighty state interest, a test that does not vary by sexual orientation. *See id.* at 578. As CAAF put it, *Lawrence* requires a "searching constitutional inquiry" into the military justification for a deprivation of this right. *Marcum*, 60 M.J. at 205.

In describing the liberty interest at stake, *Lawrence* used sweeping language that applies only to the most fundamental of liberty interests. *See, e.g.*, 539 U.S. at 578 (describing "full right" that can be pursued "without intervention of the government"); *id.* at 562 ("transcendent dimensions" of liberty); *id.* at 574 ("the heart of liberty"); *id.* at 577 ("an integral part of human freedom"). In addition, the language the Court used to describe *Griswold v. Connecticut*, 381 U.S. 479 (1965), *Eisenstadt v. Baird*, 405 U.S. 438 (1972), *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), and that Justice Stevens used in his now "controlling" dissent in *Bowers* – the authorities on which the Court explicitly based its *Lawrence* holding – leaves no doubt that it was invoking a pre-existing "fundamental" right. *See Lawrence*, 539 U.S. at 565 (stating that *Roe* "confirmed once more" that the "liberty" protected by the Due Process Clause "has a substantive dimension of *fundamental* significance in defining the rights of the person" (emphasis added)); *id.* (describing the privacy right at issue in *Eisenstadt* as a "*fundamental* human right[]" (emphasis added)); *id.* (noting that the "liberty" interest in *Roe* was entitled to "*real and substantial* protection" (emphasis added)). When the Supreme Court said that its previous description of the right at issue in *Bowers* as a "fundamental right . . . to engage in sodomy" had been in error, it did so not because "the liberty at stake" was *less* than "fundamental," but rather because *Bowers* mischaracterized the fundamental right. *Id.* at 567.

Defendants are wrong to suggest that *Lawrence* applied the standard used for non-fundamental rights – the rational basis test[11] – which asks only whether a law is "rationally related

---

[11]    Cases so holding, like the dissent in *Lawrence*, extrapolate from a single sentence that they incorrectly interpret as applying a rational basis test: "The Texas statute furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." *Lawrence*, 539 U.S. at 578. The Court's concern that interests be

to legitimate government interests." *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997). The language *Lawrence* used, the authorities it relied upon, and the result it reached are not consistent with rational basis analysis. Instead, *Lawrence* reflected the Court's practice to give close judicial scrutiny to restrictions on liberty interests. Although the precise formulations have varied, the Supreme Court consistently has looked closely at the degree and nature of the burden on such an interest and has given careful consideration to any weighty governmental interests that stand opposed to a fundamental liberty interest, before ruling on the constitutionality of a statute or its application. The Court has said that when a law burdens a fundamental right, a reviewing court must determine whether the particular infringement is "precisely tailored" to a "compelling governmental interest." *Plyler v. Doe*, 457 U.S. 202, 217 (1982); *see also Glucksberg,* 521 U.S. at 721 (the Due Process Clause "forbids the government to infringe fundamental liberty interests *at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest") (citation and internal quotation marks omitted). In other cases, the Court has looked to whether a state's regulation places an "undue burden" – that is, whether the restriction's "purpose or effect is to place a substantial obstacle" – on the exercise of a fundamental right. *See, e.g., Casey*, 505 U.S. at 878.

Because Plaintiffs allege specific facts supporting their claims that they were discharged for the exercise of the very liberty interest involved in *Lawrence*, and because *Lawrence* requires at least the "searching constitutional inquiry" promised in the military context in *Marcum*, 60 M.J. at 205, Defendants' motion to dismiss cannot be granted. Taking Plaintiffs' allegations as true,

---

"legitimate" is not confined to the rational basis standard, *see, e.g., Planned Parenthood v. Casey*, 505 U.S. 833, 846 (1992) (considering state's "legitimate interests"), nor in applying the rational basis standard do courts concern themselves with the "intrusion" a law makes into a person's private life, *see, e.g., Fitzgerald v. Racing Ass'n*, 539 U.S. 103, 107-10 (2003) (conducting rational basis review without consideration of effect of law on plaintiffs). It is also important to remember that, in *Lawrence,* the State of Texas relied exclusively on application of the rational basis standard, thus permitting the Supreme Court to bypass any detailed application of strict or heightened scrutiny. *See* Resp't's Br. at 30, *Lawrence v. Texas*, 539 U.S. 558 (2003) (No. 02-102), *available at* 2003 WL 470184. By holding that the interests Texas asserted were not *even legitimate*, the Court also held that they were not compelling.

Plaintiffs have stated a valid claim not only under strict and heightened scrutiny but also under the rational basis test.

> c)    **The Application of *Lawrence* Is Not Limited to Criminal Cases.**

Defendants also suggest incorrectly that even if *Lawrence* does require heightened scrutiny, it is distinguishable from this case because, unlike the Texas statute involved in *Lawrence*, section 654 does not impose criminal sanctions. (Defs.' Mem. at 21.)

In cases concerning liberty interests protected by the Due Process Clause, the Supreme Court analyzes whether a liberty interest is being burdened and then asks whether there is a fit between that burden and the asserted governmental interests. The burden need not be a criminal sanction. *See, e.g., Troxel v. Granville*, 530 U.S. 57, 67 (2000) (plurality opinion) (declaring unconstitutional an infringement of a fundamental right under a non-criminal statute that was "breathtakingly broad"); *Casey*, 505 U.S. at 878 (looking to whether a state's civil and criminal regulation places an "undue burden" – whether the restriction's "purpose or effect is to place a substantial obstacle" – on the exercise of a fundamental right); *Plyler*, 457 U.S. at 220 (denial of enrollment in public schools constituted a "discriminatory burden").

In addition, in explaining why it was necessary to overrule *Bowers* even though state criminal sodomy prohibitions were rarely enforced, *Lawrence* discussed the criminal nature of the Texas statute. In the course of this discussion, the Court noted that the offense was "a class C misdemeanor, a minor offense in the Texas legal system," *Lawrence*, 539 U.S. at 575, but the Court emphasized that the "penalties and purposes" of the statute had "far-reaching consequences." *Id.* at 567. These included "collateral consequences" such as "notations on job application forms, to mention but one example." *Id.* at 576. It is undisputable that section 654 is regularly enforced. (*See, e.g.*, Compl. ¶ 6 ("Approximately 10,000 service members – including Plaintiffs – have been discharged under "Don't Ask, Don't Tell.").) When service members are discharged pursuant to

23

section 654, they, among other things, lose their livelihood, educational benefits, and are barred from future military service. These are precisely the sort of "penalties and purposes" that *Lawrence* invalidates.

### B.    Plaintiffs' Equal Protection Claim Is Supported by Factual Allegations.

Because section 654 discriminates against gay persons in the exercise of a fundamental right, strict scrutiny applies and the statute violates the equal protection component of the Fifth Amendment's Due Process Clause for reasons parallel to why it unconstitutionally infringes on due process liberty interests. Even if a fundamental right were not involved, heightened scrutiny would be required because sexual orientation is a suspect classification. However, for purposes of this motion to dismiss, even if sexual orientation were (incorrectly) not considered a suspect classification, section 654 must still be rationally related to the legitimate government interest it purports to serve, a level of constitutional scrutiny that requires a "search for the link between [the] classification and objective." *Romer v. Evans*, 517 U.S. 620, 632 (1996). Because of the presence of anti-gay animus, a more searching form of rational basis review applies here. *See id.* at 633 (overturning classification where fit between classification and objective was so poor that it could only be attributed to animus). But even under the most deferential rational basis test, a court must "insist on knowing the relation between the classification adopted and the object to be attained," *id.* at 632, and the explanations offered "must find some footing in the realities of the subject addressed by the legislature," *Heller v. Doe*, 509 U.S. 312, 321 (1993). It is not enough that the government invokes highly generalized interests, or simply recites legitimate interests that the challenged statute, rather than the classification drawn by the law, purports to serve. *See Romer*, 517 U.S. at 635 (invalidating state constitutional amendment that made a classification based on sexual orientation despite government's argument that the classification was rationally related to the state's

24

interest in "respect for other citizens' freedom of association" and the state's interest in "conserving resources to fight discrimination against other groups").

The Complaint alleges facts in support of a cognizable claim that section 654 violates equal protection because it "is at once too narrow and too broad." *Compare Romer*, 517 U.S. at 633 *with* Compl. ¶¶ 46-47 (applies to service members that pose no threat to unit cohesion) *and id.* ¶ 50 (does not apply to other groups toward which service members may harbor animus). These allegations are sufficient to survive a motion to dismiss, as courts are "most likely" to "hold a law unconstitutional under the Equal Protection Clause where, as here, the challenged legislation inhibits personal relationships." *Lawrence*, 539 U.S. at 580 (O'Connor, J., concurring); *see also Romer*, 517 U.S. at 633 (classification overturned where the fit between classification and objective was so poor that it could only be attributed to animus).

Defendants cannot sidestep Plaintiffs' equal protection claim by pretending that section 654 does not target gay people. (Defs.' Mem. at 31.) Defendants say section 654 "do[es] not discriminate against homosexuals based on their orientation, but on the likelihood or propensity to engage in homosexual acts." (*Id.*) This is doublespeak. Defendants' attempt to erect an analytic wall between Plaintiffs' status (as gay men and lesbians) and conduct (a "propensity to act in accordance with their sexual desires") is not even supported by their own brief, which acknowledges that section 654 assumes that gay men and lesbians "act in accordance with their sexual desires." (*Id.* at 27.) In any event, *Lawrence* rejects this reasoning. "When homosexual *conduct* is made criminal . . . that declaration in and of itself is an invitation to subject homosexual *persons* to discrimination." *Lawrence*, 539 U.S. at 575 (emphasis added).[12] Like sodomy statutes,

---

[12]    Indeed, Defendants' attempt to whitewash section 654 as only discriminating against "homosexual conduct" and not plaintiffs' "orientation" is difficult to distinguish from the State of Texas's failed argument in *Lawrence*. *Compare* Defs.' Mem. at 31 *with Lawrence*, 539 U.S. at 583 (O'Connor, concurring) (rejecting argument that the sodomy law at issue did not "discriminate against homosexual persons," but "only against homosexual conduct").

section 654 and its regulations "do seek to control a personal relationship that, whether or not entitled to formal recognition in the law, is within the liberty of persons to choose without being punished." *Id.* at 567. Moreover, even if Defendants' proposed status/conduct analysis found support in the law, it still would not be a basis upon which to dismiss the case because *this* Complaint alleges that section 654 was unconstitutionally applied to *these* Plaintiffs based on their sexual orientation, and not because of their conduct. (*See* Compl. ¶ 63-153, 177-79.)

### C.    Plaintiffs State a Claim for Violation of the First Amendment.

Plaintiffs' claim that section 654 violates the First Amendment is governed by familiar standards. To state a claim, Plaintiffs must allege that (1) state action has burdened (2) speech or other expression protected by the First Amendment. *See, e.g., Simon & Schuster v. Crime Victims Bd.*, 502 U.S. 105, 115-18 (1991). To state a claim for a content-based violation, Plaintiffs must allege that state action (1) discriminates against (2) speech because of its (3) substantive content. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). Such a regulation is *"presumptively invalid."* *Id.* (emphasis added). Thus, section 654 could be upheld only if the government can show that it is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

The Supreme Court has repeatedly insisted that regulations of speech within the military must be neutral and evenhanded. In *Greer v. Spock*, 424 U.S. 828 (1976), the Court explained that a restriction on political demonstrations on military property must be "objectively and evenhandedly applied" in order to survive First Amendment scrutiny. *Id.* at 839. In *Brown v. Glines*, 444 U.S. 348 (1980), the Court recognized that irrational, invidious, or arbitrary enforcement of speech restrictions would "giv[e] rise to legitimate claims under the First Amendment" by service members. *Id.* at 358 n.15.

1.    **"Don't Ask, Don't Tell" Is Presumptively Invalid Under the First Amendment.**

The plain language of section 654 and the detailed allegations in the Complaint easily satisfy the elements of a First Amendment claim. By its express terms, section 654 requires immediate separation and discharge if a service member honestly "state[s] that he or she is a homosexual or bisexual, or words to that effect." 10 U.S.C. § 654(b)(2). That is a speech restriction. The restriction on speech is not limited to a service member's official duties but applies "at all times that the member has a military status, whether the member is on base or off base, and whether the member is on duty or off duty." *Id.* § 654(a)(10). Section 654 itself characterizes this restriction as "pervasive" in its scope. *Id.* § 654(a)(11); *see also* Dep't of Defense Instruction 1332.40, *Separation Procedures for Regular and Commissioned Officers.*

All Plaintiffs were discharged because of the content of their speech about their sexual orientations. Ten of the twelve Plaintiffs were discharged under section 654 in part because they made statements that they were gay or lesbian – Plaintiffs Cook, Dresch, Galaburda, Hill, Kopfstein, McGinn, Peacock, Pietrangelo, Sparks, and Vasquez. (*See* Compl. ¶¶ 67, 69, 73, 74, 77, 78, 104, 106, 107, 111, 115, 125, 129, 138, 140, 147, 148, 151, 152). The other two – Jack Glover and David Hall – were investigated and ultimately discharged when they remained silent and refused to speak against allegations that they were gay. (Compl. ¶¶ 86, 88, 98.) Speech relating to one's sexual orientation is fully protected under the First Amendment. *See Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 570 (1995) (identifying oneself as "openly gay, lesbian, and bisexual descendents of . . . Irish immigrants" constitutes protected expression under the First Amendment). "The *Hurley* Court recognized that the statement 'I am homosexual' expresses a viewpoint." *Elzie v. Aspin*, 897 F. Supp. 1, 5 (D.D.C. 1995). Section 654 leaves heterosexual service members entirely free to discuss their sexual identities and

27

to express their views about homosexuality.  Only service members who speak from the viewpoint of any openly gay or bisexual person are silenced.

Section 654 even prohibits Plaintiffs from discussing their identities in purely private settings.  *See* 10 U.S.C. § 654(a)(9)-(10); Compl. ¶¶ 3, 36.  The Supreme Court always has applied careful First Amendment scrutiny to military regulations when they apply to speech in civilian life.  *See Schacht v. United States*, 398 U.S. 58, 62-63 (1970) (striking down, under the First Amendment, a military regulation that sought to prohibit the use of official uniforms in civilian dramatic performances); *United States v. O'Brien*, 391 U.S. 367, 376-77 (1968) (applying the First Amendment, without deference, to a military regulation prohibiting the burning of draft cards as "symbolic speech").  Section 654 prohibits Plaintiffs, and all gay and bisexual service members, from identifying themselves to their families, to the press, even to their elected representatives.  As a result, the perspective of active-duty gay service members is excluded from public discourse.  It is difficult to imagine a more direct intrusion into the values that the First Amendment was designed to protect.  *See* Tobias Barrington Wolff, *Political Representation and Accountability Under Don't Ask, Don't Tell*, 89 Iowa L. Rev. 1633 (2004).

In practice, section 654 forces gay and lesbian service members to pretend that they are straight.  As Plaintiffs allege, casual questions about personal lives can be impossible to answer honestly without revealing sexual orientation.  (*See, e.g.*, Compl. ¶ 111.)  Section 654 demands that gay service members answer by either lying or remaining silent.  The Supreme Court has often recognized that "in our culture . . . remaining silent can signify adherence to a view."  *Lee v. Weisman*, 505 U.S. 577, 593 (1992).  Such a compelled affirmation of identity is the most serious form of First Amendment violation.  *See West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 633-34 (1943).

28

Contrary to Defendants' assertions, section 654(b)(2) does not offer a "rebuttable presumption." (Defs.' Mem. at 34.) Section 654(b)(2) allows a service member who has said he is gay the chance to escape discharge only if he can convince the military that he "is not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts." 10 U.S.C. § 654(b)(2). But section 654 uses *those exact words* to define "homosexual." *See* 10 U.S.C. § 654(f)(1) (defining "homosexual" as a person "who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts"). Thus, section 654(b)(2) merely allows a homosexual service member the opportunity to prove that he is not a homosexual service member. This is not a "rebuttable presumption"; it is an invitation to recant. As discovery will show, this "rebuttable presumption" is a dead letter in practice.[13]

Defendants cannot overcome the presumed invalidity that attaches to this content- and viewpoint-based restriction on a motion to dismiss, nor have they tried to do so. Consequently, Plaintiffs' First Amendment claim must go forward. *See City of Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 493-94 (1986) (plurality opinion) (where, as here, speech restriction allegedly justified by government's factual arguments, court "unwilling to decide the legal questions posed by the parties without a more thoroughly developed record of proceedings"); *Asociacion de Educacion Privada de P.R., Inc. v. Echevarria-Vargas,* 385 F.3d 81, 86 (1st Cir. 2004) ("We cannot say, in the absence of any evidence about the nature and weight of the burdens imposed and the nature and strength of the government's justifications, that plaintiffs have no possible claims.").

---

[13]    Defendants attempt to skirt the fact that section 654(b)(2) offers no meaningful opportunity for rebuttal by citing *Holmes v. California Army National Guard*, 124 F.3d 1126 (9th Cir. 1997), and *Thorne v. U.S. Dep't of Defense*, 945 F. Supp. 924 (E.D. Va. 1996), for the *factual* proposition that discharge hearings do in fact offer service members a meaningful opportunity to rebut the presumption. (Defs.' Mem. at 30 n.7). But as the *Thorne* court itself recognized, "the presumption's rebuttability *is essentially a factual issue* that may deserve reexamination" depending on the implementation of the "presumption" during discharge hearings. 945 F. Supp. at 927 n.5. It is inappropriate, on a motion to dismiss, for the Defendants to ask the Court to draw factual conclusions about the current practice of discharge hearings by relying on conclusions drawn seven years ago by another court, on a different factual record.

2. **Defendants Cannot Avoid the First Amendment by Claiming that "Don't Ask, Don't Tell" Does Not Regulate Speech.**

Defendants transparently seek to avoid First Amendment scrutiny by saying that "Don't Ask, Don't Tell" does not involve speech, but instead is a rule of "evidence." That makes no sense. As noted, the statute requires discharge of those service members who "tell" someone they are gay (or "words to that effect"), and these Plaintiffs allege that they were discharged for "telling" (or refusing to tell when asked).

Defendants improperly characterize *Wayte v. United States*, 470 U.S. 598 (1985), as support for their argument that section 654 is insulated from First Amendment scrutiny as a rule of evidence, claiming that *Wayte* "disposes of the plaintiffs' First Amendment claim." (Defs.' Mem. at 33.) But *Wayte* did not concern the use of speech as "evidence" at all; the defendant in *Wayte* had not even been tried. *See Wayte*, 470 U.S. at 604-05 (noting dismissal of the indictment below). *Wayte* merely held that the First Amendment does not grant "immunity from prosecution" to those who "self-report" violations of criminal statutes. *Id.* at 613-14. It says nothing about whether or how those prosecutions, once begun, may make use of "self-reporting" speech.

Defendants also cite *Wisconsin v. Mitchell*, 508 U.S. 476 (1993), to argue that the First Amendment *never* prohibits the use of speech as evidence. (Defs.' Mem. at 32.) This is nonsense, as *Mitchell* itself demonstrates. In *Mitchell,* a defendant's sentence was enhanced under a hate-crimes law because the state introduced evidence that he had committed a violent crime because of the victim's race. *See Mitchell*, 508 U.S. at 480-82. The defendant argued that the sentencing enhancement chilled his protected speech. The Court acknowledged that any law that chills protected speech raises a First Amendment claim, "evidentiary" provisions included, but found that the statute before it had no such effect because enhanced punishment was so far removed from the protected speech. *See id.* at 488-90. An "evidentiary" provision that does chill protected speech, however – in particular, when punishment follows closely after the prohibited words are spoken –

30

requires intense First Amendment scrutiny, as the Court has frequently held. *See, e.g., Dennis v. United States,* 341 U.S. 494, 505 (1951) (holding that use of political speech as "evidence" of subversive activities must satisfy the "clear and present danger" test). The Complaint plainly alleges that the military policy "chills" the protected speech of gay, lesbian, and bisexual service members because "any honest admission by a service member that he or she is gay, lesbian, or bisexual requires discharge." (Compl. ¶¶ 3, 36.) Thus, far from supporting Defendants' case, *Wisconsin v. Mitchell* demonstrates the merits of Plaintiffs' First Amendment claims. *See also Dawson v. Delaware,* 503 U.S. 159, 167 (1992) (reversing a conviction for first degree murder because admission of evidence of membership in the Aryan Brotherhood violated defendant's First Amendment rights); *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 502 (1949) (involving picketers whose "sole, unlawful immediate objective was to induce Empire to violate the Missouri law").

Indeed, Defendants' cases at most show that speech can be used as evidence of a *crime.* But "homosexual acts" are not crimes after *Lawrence* and *Marcum,* so a statement of homosexuality is not evidence of propensity to commit a crime. This changed landscape renders obsolete all the legal reasoning in the old section 654 cases relied on by Defendants. *See supra* at n.6. Defendants' argument was a stretch even before *Lawrence* because section 654 defines "homosexual act" so broadly -- as Plaintiff Peacock's story shows, the term includes even holding hands with another man for two seconds. (Compl. ¶¶ 126, 128.)

## III.    DEFERENCE IS INAPPROPRIATE BECAUSE, AS THE COMPLAINT ALLEGES, THE CONGRESSIONAL JUDGMENTS BEHIND SECTION 654 LACK SUPPORT.

The reason that courts "defer[] to legislative and executive judgments in the area of military affairs," *Rostker,* 453 U.S. at 66, is because "courts have less competence" in military affairs than Congress, *Charles v. Rice,* 28 F.3d 1312, 1319 (1st Cir. 1994) (quoting *Gilligan v. Morgan,* 413

31

U.S. 1, 10 (1973)). But that premise of institutional competence holds only when Congress's "decision" was "sufficiently supported by testimony adduced at the hearings," *Rostker*, 453 U.S. at 76, and is based on constitutionally legitimate interests. That standard was met in *Rostker* (which concerned the exclusion of women from draft registration) because "Congress was fully aware not merely of the many facts and figures presented to it by witnesses who testified before its Committees, but of the current thinking as to the place of women in the Armed Services," *id.* at 71. The Court repeatedly emphasized in *Rostker* that deference was proper because Congress had acted "carefully" and in light of all available evidence.

Here, Plaintiffs specifically alleged that the challenged statutes and regulations "serve[] no legitimate government or military interest" (Compl. ¶ 4) and that Congress's judgments were "unsupported by the evidence before Congress" (*id.* at ¶ 43). Though not required to do so under liberal notice pleading rules, Plaintiffs went further and alleged that evidence available at the time contradicted Congress's "findings." (*See* Compl. ¶¶ 43-52.) Two Department of Defense reports and a RAND study all found no evidence of negative effects from the presence of gay and lesbian service members; the RAND study concluded that "[t]here is no direct scientific evidence regarding the effects of the presence of acknowledged homosexuals on unit cohesion or unit performance" and that "there is ample reason to believe that heterosexual and homosexual military personnel can work together effectively." (*Id.* at ¶ 45.) Not surprisingly, shortly before the 1991 Gulf War, "the Department of Defense announced that the discharge of known gay personnel could be 'deferred' until those personnel were no longer needed" – something that military commanders would not have done had they believed the presence of gays harms military effectiveness. (Compl. ¶ 49.) These facts warrant an inference that Congress was – as Plaintiffs have alleged – acting out of animus towards gays and lesbians. *See Romer*, 517 U.S. at 634 ("laws of the kind now before us raise the inevitable inference that the disadvantage imposed is born of animosity").

32

Defendants argue that the Complaint's allegations concerning the underpinnings of
Congress' "findings" are "manifestly incorrect." (Defs.' Mem. at 9, 10.) But it is hornbook law
that Defendants cannot quarrel with allegations in the Complaint at the pleading stage. The
allegations in the Complaint, if proven, would be more than sufficient to establish as a matter of law
that the statutory "findings" in 10 U.S.C. § 654(a) are not owed deference for purposes of
constitutional review. *See Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 80, 89-90 (2000) (evidence
cited in a "decade's worth of congressional reports and floor debates" fell "well short of the mark");
*Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 645-46 (1999)
(finding that, notwithstanding evidence submitted to Congress about patent infringement by States,
the "record at best offers scant support for Congress' conclusion that States were depriving patent
owners of property without due process of law").

Another line of deference cases relied upon by Defendants does not involve the review of
statutes' constitutionality at all, but rather stand for the proposition that courts should not use the
judicial power to micromanage the military.  For example, *Goldman v. Weinberger*, 475 U.S. 503
(1986), reviewed the constitutionality of an Air Force uniform regulation.  *Greer v. Spock*, 424 U.S.
828 (1976), reviewed an Army base command's decision not to allow a presidential candidate to
make a campaign appearance on base. *Gilligan v. Morgan*, 413 U.S. 1 (1973), involved a "call on
judicial power to assume continuing regulatory jurisdiction over the activities of the Ohio National
Guard," *id.* at 5.  Those cases do not speak to the deference a court grants a federal statute, but to
the deference a court must exercise before it contradicts the "professional judgment[s]" made by
"military authorities" in the course of carrying out their duties. *Goldman*, 475 U.S. at 507.
Although Defendants argue that the "professional judgment[s]" of "military authorities" is that
military effectiveness requires the exclusion of gay service members, Plaintiffs have alleged
otherwise.  Plaintiffs alleged that "[d]uring the 1991 Gulf War, the Department of Defense

33

announced that the discharge of known gay personnel could be 'deferred' until those personnel were no longer needed." (Compl. ¶ 49.) The *actions* of military commanders – not a handful of *statements* by individuals – reflect the judgment concerning whether the service of "known gay personnel" would hurt unit cohesion or reduce military effectiveness.

To find more specific instances when military professionals judged that the presence of gay service members does not harm military effectiveness, one need only read the Complaint. The Navy sent Plaintiff Kopfstein on a six-month deployment in support of Operation Enduring Freedom after she had revealed her sexual orientation (Compl. ¶ 112), and qualified her for a position that would have allowed her to take command of her ship in certain situations (Compl. ¶ 113). The Air Force selected Plaintiff Glover for a leadership position after it was known that he was gay (Compl. ¶¶ 82, 86-87), and the Coast Guard similarly promoted Plaintiff Peacock after it was known that he was gay (*id.* ¶ 130). After Plaintiff Pietrangelo revealed his sexual orientation, his command nonetheless kept him in a leadership position, where he created an operational law office from scratch and prepared his Division's Judge Advocate's Office for deployment to Iraq. (Compl. ¶ 139.) Defendants never explain how discharging any of Plaintiffs promoted any military interests, or reflected anything other than animus.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs believe that oral argument may assist the Court, and wish to be heard. Plaintiffs request oral argument under Local Rule 7.1(d).

Respectfully submitted,

PLAINTIFFS

Thomas Cook; Megan Dresch; Laura
Galaburda; Jack Glover; David Hall; Monica
Hill; Jenny Lynn Kopfstein; Jennifer McGinn;
Justin Peacock; James E. Pietrangelo II; Derek
Sparks; Stacy Vasquez,

By:  /s/ Matthew A. Stowe
    Jonathan A. Shapiro (BBO #567838)
    Maura T. Healey (BBO #640856)
    Matthew A. Stowe (BBO #650473)
    Louis W. Tompros (BBO #657791)
    WILMER CUTLER PICKERING
        HALE AND DORR LLP
    60 State Street
    Boston, MA  02109
    (617) 526-6000
    (617) 526-5000 (Fax)

Sharra E. Greer
Kathi S. Westcott
Sharon E. Debbage Alexander
SERVICEMEMBERS LEGAL DEFENSE NETWORK
P.O. Box 65301
Washington, DC  20035
(202) 328-3244
(202) 797-1635 (Fax)

Stuart F. Delery
Josh Goldfoot
Alison J. Nathan
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2445 M Street NW
Washington, DC  20037
(202) 663-6000
(202) 663-6363 (Fax)

Dated: March 28, 2005

**CERTIFICATE OF SERVICE**

I, Louis W. Tompros, hereby certify that I caused a copy of the within document to be served by electronic notification upon:

> Mark T. Quinlivan
> Assistant United States Attorney
> United States Attorney's Office
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 9200
> Boston, MA  02210

/s/ Louis W. Tompros_____
Louis W. Tompros

Dated:  March 28, 2005

36