## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| THOMAS COOK; MEGAN DRESCH; ) | |
| LAURA GALABURDA; JACK GLOVER; ) | Civil Action No. 04-12546 GAO |
| DAVID HALL; MONICA HILL; JENNY ) | |
| LYNN KOPFSTEIN; JENNIFER McGINN; ) | |
| JUSTIN PEACOCK; JAMES E. ) | |
| PIETRANGELO II; DEREK SPARKS; ) | |
| STACY VASQUEZ, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DONALD H. RUMSFELD, Secretary of ) | |
| Defense; MICHAEL CHERTOFF, Secretary of ) | |
| Homeland Security; UNITED STATES OF ) | |
| AMERICA, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## REPLY MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

MICHAEL J. SULLIVAN
United States Attorney

MARK T. QUINLIVAN
Assistant United States Attorney
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
617-748-3606

Dated: April 12, 2005

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    LAWRENCE DOES NOT CALL INTO QUESTION UNANIMOUS
      PRECEDENT UPHOLDING § 654 AGAINST CONSTITUTIONAL
      CHALLENGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   THE QUESTION WHETHER § 654 SATISFIES RATIONAL BASIS
      REVIEW IS A LEGAL QUESTION THAT MAY BE RESOLVED
      ON A MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                    <u>PAGE(S)</u>

<u>Able</u> v. <u>United States</u>,
    155 F.3d 628 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 7, 10

<u>Able</u> v. <u>United States</u>,
    88 F.3d 1280 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13

<u>Beller</u> v. <u>Middendorf</u>,
    632 F.2d 788 (9th Cir. 1980), *cert. denied*,
    452 U.S. 905, 454 U.S. 855 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

<u>Bowers</u> v. <u>Hardwick</u>,
    478 U.S. 186 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Boyette</u> v. <u>Galvin</u>,
    311 F. Supp.2d 237 (D. Mass. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 n.1

<u>City of Cleburne</u> v. <u>Cleburne Living Ctr., Inc.</u>,
    473 U.S. 432 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Clark</u> v. <u>Jeter</u>,
    486 U.S. 456 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Dandridge</u> v. <u>Williams</u>,
    397 U.S. 471 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>F.C.C.</u> v. <u>Beach Communications, Inc.</u>,
    508 U.S. 307 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 10

<u>Goldman</u> v. <u>Weinberger</u>,
    475 U.S. 503 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

<u>Gregory</u> v. <u>Ashcroft</u>,
    501 U.S. 452 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Heller</u> v. <u>Doe</u>,
    509 U.S. 312 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 10, 14

Hensala v. Dept. of Air Force,
    343 F.3d 951 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hoffman v. United States,
    1997 WL 136418 (E.D. Pa. March 24, 1997), *aff'd*,
    124 F.3d 187 (3d Cir. 1997) (Mem.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Holmes v. California Army National Guard,
    124 F.3d 1126 (9th Cir. 1997), *cert. denied*,
    525 U.S. 1067 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13

Howard v. U.S. Dept. of Defense,
    354 F.3d 1358 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.5

Johnson v. California,
    125 S. Ct. 1141 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Kimel v. Florida Bd. of Regents,
    528 U.S. 62 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 12

Lawrence v. Texas,
    539 U.S. 558 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Lofton v. Secretary of the Dept. of Children and Family Servs,
    358 F.3d 804 (11th Cir. 2004), *cert. denied*,
    125 S. Ct. 869 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 n.2

Massachusetts Bd. of Retirement v. Murgia,
    427 U.S. 307 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13 n.6

New York City Transit Auth. v. Beazer,
    440 U.S. 568 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13 n.6

Palmore v. Sidoti,
    466 U.S. 429 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Philips v. Perry,
    106 F.3d 1420 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Richenberg v. Perry,
    97 F.3d 256 (8th Cir. 1996), *cert. denied*,
    522 U.S. 807 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 13, 14

Romer v. Evans,
        517 U.S. 620 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 n.1, 7

Rostker v. Goldberg,
        453 U.S. 57 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

Schwartz v. Brodsky,
        265 F. Supp.2d 130 (D. Mass. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Smart v. Ashcroft,
        401 F.3d 119 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.5

Steffan v. Cheney,
        1991 WL 155811 (D.D.C. Aug. 1, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.4

Student Members of SAME v. Rumsfeld,
        321 F. Supp.2d 388 (D. Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Thomasson v. Perry,
        80 F.3d 915 (4th Cir. 1996), cert. denied, 519 U.S. 948 (1996) . . . . . . . . . . . . . . 1, 3, 6

Thorne v. U.S. Dept. of Defense,
        945 F. Supp. 924, 927-30 (E.D. Va. 1996), aff'd,
        139 F.3d 893 (4th Cir.), cert. denied,
        525 U.S. 947 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Turner Broadcasting System, Inc. v. FCC,
        520 U.S. 180 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Turner Broadcasting v. FCC,
        512 U.S. 622 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Extreme Associates, Inc.,
        352 F. Supp.2d 578 (W.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 n.2

United States v. Marcum,
        60 M.J. 198 (C.A.A.F. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 9 n.3

Vance v. Bradley,
        440 U.S. 93 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13 n.6

Walker v. Exeter Region Coop. School Dist.,
        284 F.3d 42 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

-iv-

Washington Legal Found. v. Massachusetts Bar Found.,
    993 F.2d 962 (1st Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

Wilson v. Ake,
    354 F. Supp.2d 1298 (M.D. Fla. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 n.2


**STATUTES**

5 U.S.C. § 701-706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

10 U.S.C. § 654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

50 U.S.C. §§ 451-473 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11


**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9


**LEGISLATIVE MATERIAL**

S. Rep. No. 112, 103rd Cong., 1st Sess. 265-70 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

139 Cong. Rec. S11173 (Sept. 9, 1993) (statement of Sen. Nunn) . . . . . . . . . . . . . . . . . . 14 n.7

139 Cong. Rec. S11197 (Sept. 9, 1993) (statement of Sen. Kennedy) . . . . . . . . . . . . . . . 14 n.7

139 Cong. Rec. S11204 (Sept. 9, 1993) (statement of Sen. Feingold) . . . . . . . . . . . . . . . 14 n.7

139 Cong. Rec. H7069 (Sept. 28, 1993) (statement of Rep. Kyl) . . . . . . . . . . . . . . . . . . . 14 n.8

139 Cong. Rec. H7077 (Sept. 28, 1993) (statement of Rep. Studds) . . . . . . . . . . . . . . . . 14 n.8

139 Cong. Rec. H7082 (Sept. 28, 1993) (statement of Rep. Schroeder) . . . . . . . . . . . . . . 14 n.8

## PRELIMINARY STATEMENT

This case, in which plaintiffs challenge the constitutionality of an Act of Congress regarding homosexual conduct in the Armed Forces, involves an issue that has profound effects on the military's ability to fulfill its mission, and "implicates in the most fundamental way the role of courts in our democratic system." Thomasson v. Perry, 80 F.3d 915, 921 (4th Cir.) (en banc), *cert. denied*, 519 U.S. 948 (1996). In our opening memorandum, we demonstrated that substantial deference must be accorded to the considered judgments of Congress, the Executive Branch, and the military in determining eligibility requirements for military service, particularly where, as here, Congress's policy choice was reached after months of study, hearings, and debate. We further demonstrated that the Act is a conduct-based policy that rationally furthers the government's interests in maintaining unit cohesion, reducing sexual tension, and protecting personal privacy, and that the courts of appeals to have considered these questions have unanimously held that the statute, 10 U.S.C. § 654, does not infringe upon constitutional rights to due process, equal protection, or free speech.

In their response, plaintiffs make two central arguments in support of their contention that dismissal of this lawsuit is inappropriate at the pleadings stage. First, plaintiffs contend (Opp. at 3, 5-7, 19-24) that the courts of appeals decisions upholding § 654 have been undermined by Lawrence v. Texas, 539 U.S. 558 (2003), and are no longer controlling. For the reasons explained in our opening memorandum and below, that argument is incorrect. The Supreme Court did not identify a new fundamental right in Lawrence nor did it apply heightened scrutiny. Rather, the Court applied rational basis review, and every Article III court to have considered the question has so interpreted the Lawrence decision. Lawrence also involved a criminal prohibition and did not involve the special needs of the military, and therefore has no bearing on the constitutionality of § 654.

-1-

Second, plaintiffs assert (Opp. at 2-3, 12-26, 31-34) that defendants have disregarded the Rule 12(b)(6) standard, and contend that they have alleged sufficient facts in their Complaint to survive a motion to dismiss. But it is the plaintiffs who misapprehend the relevant standard of review. Legislative classifications subject to rational basis review must be sustained "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification," Heller v. Doe, 509 U.S. 312, 320 (1993), and it is the burden on those attacking the rationality of such classifications "to negative every conceivable basis which might support it." F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 315 (1993). In this case, because the publicly-available Congressional record establishes that the Act rationally furthers the government's interests in maintaining unit cohesion, reducing sexual tension, and protecting personal privacy, plaintiffs have not met, and cannot meet, that burden.

Plaintiffs likewise err (Opp. at 3-4) in arguing that they are entitled to "prove their claims on a complete factual record," and that "resolving such disputes is the classic purpose of discovery." To the contrary, it is well-established that "a legislative choice is not subject to courtroom factfinding," Heller, 509 U.S. at 320 (emphasis added), and a court has no warrant to "substitute [its] judgment of what is desirable for that of Congress, or [its] own evaluation of evidence for a reasonable evaluation by the Legislative Branch." Rostker v. Goldberg, 453 U.S. 57, 68 (1981).

## ARGUMENT

### I.    LAWRENCE DOES NOT CALL INTO QUESTION UNANIMOUS PRECEDENT UPHOLDING § 654 AGAINST CONSTITUTIONAL CHALLENGE

Plaintiffs acknowledge, as they must, that every court of appeals to have considered the very same claims as those raised in this case has held that § 654 and the implementing Department of

Defense ("DoD") regulations do not infringe upon constitutional rights to privacy, equal protection, or free speech. See Able v. United States, 155 F.3d 628 (2d Cir. 1998) ("Able II"); Holmes v. California Army Nat'l Guard, 124 F.3d 1126 (9th Cir. 1997), cert. denied, 525 U.S. 1067 (1999); Philips v. Perry, 106 F.3d 1420 (9th Cir. 1997); Richenberg v. Perry, 97 F.3d 256 (8th Cir. 1996), cert. denied, 522 U.S. 807 (1997); Able v. United States, 88 F.3d 1280 (2d Cir. 1996) ("Able I"); Thomasson, 80 F.3d 915. See also Hoffman v. United States, 1997 WL 136418 (E.D. Pa. March 24, 1997) (upholding constitutionality of § 654 against constitutional challenge), aff'd, 124 F.3d 187 (3d Cir. 1997) (Mem.). Applying rational basis review,[1] and recognizing the special deference that is accorded the judgments of Congress and the Executive in matters of military affairs, these courts have held that the statute rationally furthers the government's legitimate interest in promoting unit cohesion, reducing sexual tension, and protecting personal privacy. As the en banc Fourth Circuit reasoned in Thomasson, "[i]t was legitimate, therefore, for Congress to conclude that sexual tensions and attractions could play havoc with a military unit's discipline and solidarity. It was appropriate for Congress to believe that a military force should be as free as possible of sexual attachments and pressures as it prepared to do battle. Any argument that Congress was misguided in this view is one of legislative policy, not constitutional law." 80 F.3d at 929.

---

[1] This Court, too, has indicated that the rational basis test is the appropriate standard of review for classifications involving homosexuals. In Boyette v. Galvin, 311 F. Supp.2d 237 (D. Mass. 2004), a constitutional challenge to enforcement of the Anti-Aid and Religious Exclusions of the Massachusetts Constitution, the plaintiffs had placed reliance on Romer v. Evans, 517 U.S. 620 (1996), in which the Supreme Court invalidated a Colorado constitutional provision that prohibited the enactment of measures regulating discrimination against persons on the basis of sexual orientation. Of particular relevance here, this Court, in discussing Romer, stated that the Supreme Court had "concluded that the distinction lacked a rational basis, so that even though there was neither a suspect classification nor a fundamental right at stake, the constitutional provision at issue violated equal protection principles." Boyette, 311 F. Supp.2d at 243 (emphasis added).

Plaintiffs contend (Opp. at 3-4, 5-7. 19-24), however, that these decisions "have been displaced" by Lawrence because the Court in that case "used sweeping language that applies only to the most fundamental of liberty interests," and that Lawrence therefore requires a "searching constitutional inquiry." Those contentions lack merit. The decision in Lawrence -- that a state may not, consistent with substantive due process, criminalize the private, consensual, sexual conduct of gays and lesbians -- neither requires application of heightened scrutiny nor does it call into question the constitutionality of § 654.

**1.** Plaintiffs first err (Opp. at 20-23) in arguing that the Supreme Court did not apply the rational basis test in invalidating the Texas statute in Lawrence, but instead applied heightened scrutiny. A careful examination of the language used by the Court in Lawrence compels the conclusion that the Court applied rational basis review.

The Supreme Court applies "different levels of scrutiny to different types of classifications." Clark v. Jeter, 486 U.S. 456, 461 (1988). Classifications based on race or national origin, or those affecting fundamental rights, are subject to the most exacting, or strict scrutiny, under which the government is required to demonstrate that classifications "are narrowly tailored measures that further compelling governmental interests." Johnson v. California, 125 S. Ct. 1141, 1146 (2005) (internal quotation omitted). Classifications subject to intermediate scrutiny, which generally include classifications based on sex or illegitimacy, "must be substantially related to an important governmental objective." Clark, 486 U.S. at 461. Classifications subject to rational basis review need only be "rationally related to a legitimate state interest." Kimel v. Florida Bd. of Regents, 528 U.S. 62, 83 (2000).

In <u>Lawrence</u>, the Court held that a Texas statute criminalizing adult, consensual, homosexual intimacy in the home violated substantive due process because it "furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." 539 U.S. at 578. This language is consistent with, and only with, rational basis review.  The Court did not state that the Texas statute failed to further a "compelling state interest" or that it was not substantially related to an "important governmental objective," the tests utilized in heightened scrutiny; rather, the Court held that the statute served "no legitimate state interest."  <u>Compare</u> <u>Kimel</u>, 528 U.S. at 83.  For this reason, every Article III court to have considered the question has interpreted the decision in <u>Lawrence</u> as applying rational basis review.[2]

**2.**  Plaintiffs also are wrong (Opp. at 5-7) in asserting that, because the Supreme Court in <u>Lawrence</u> overruled <u>Bowers</u> v. <u>Hardwick</u>, 478 U.S. 186 (1986), the <u>Lawrence</u> decision "destroyed the foundations of Defendants' supposedly 'dispositive' cases."  As we showed in our opening memorandum (U.S. Mem. at 18-19), Congress's judgment was based on the unique needs and circumstances of military life and military service, and was not predicated upon rules applicable to

---

[2] <u>See</u> <u>Lofton</u> v. <u>Secretary of the Dept. of Children & Family Servs.</u>, 358 F.3d 804, 817 (11th Cir. 2004) (holding that "the <u>Lawrence</u> Court never applied strict scrutiny, the proper standard when fundamental rights are implicated, but instead invalidated the Texas statute on rational-basis grounds, holding that it 'furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual.'") (quoting <u>Lawrence</u>, 539 U.S. at 578), *cert. denied*, 125 S. Ct. 869 (2005); <u>Wilson</u> v. <u>Ake</u>, 354 F. Supp.2d 1298, 1306 (M.D. Fla. 2005) ("But the Supreme Court's decision in <u>Lawrence</u> cannot be interpreted as creating a fundamental right to same-sex marriage. * * * Rather, the Court determined that the Texas statute failed under the rational basis analysis.") (internal citations omitted); <u>United States</u> v. <u>Extreme Associates, Inc.</u>, 352 F. Supp.2d 578, 591 (W.D. Pa. 2005) ("Despite defendants' urging, we do not find that <u>Lawrence</u> created a 'new' and/or 'broad' fundamental right to engage in private sexual conduct.  Although the <u>Lawrence</u> opinion is mixed, certain language suggests that the Court engaged in a rational basis review of the challenged statute.  In that light, it is reasonable to find that the court itself did not consider it was addressing a fundamental right.").

civilian society.  To the contrary, the Senate Armed Services Committee expressly disavowed the

notion that the policy was predicated on the <u>Bowers</u> rationale:

> While the committee takes note of the fact that there is no constitutional
> protection for homosexual acts, and there are no federal statutes which prohibit
> discrimination on the basis of homosexual orientation in civilian society, <u>the
> committee emphasizes that these considerations are not essential to its
> recommendations</u>.  The committee makes no judgment as to whether the protection
> of the civil rights laws should be extended to sexual orientation. The committee's
> review and its recommendations have focused on the impact of homosexual conduct
> in the unique setting of military service.  <u>Therefore, if the Supreme Court should
> reverse its ruling in Bowers and hold that private consensual homosexual acts
> between adults may not be prosecuted in civilian society, this would not alter the
> committee's judgment as to the effect of homosexual conduct in the armed forces.</u>
> The committee finds that there are no significant developments in civilian society
> that would require a change in military policy.

Senate Report No. 112, 103d Cong., 1st Sess. 269, 287 (1993) (emphasis added).

Courts, too, have upheld § 654 as satisfying rational basis review without invoking or relying

on <u>Bowers</u>.  <u>See, e.g.</u>, <u>Able II</u>, 155 F.3d at 635 ("After this extensive legislative examination,

embodied in numerous findings, <u>see</u> § 654(a), we cannot say that the reliance by Congress on the

professional judgment and testimony of military experts and personnel that those who engage in

homosexual acts would compromise the effectiveness of the military was irrational."); <u>Thomasson</u>,

80 F.3d at 929-30 ("Section 654(b) thus accommodates the reasonable privacy concerns of

heterosexual service members and reduces the sexual problems that may arise when some members

of the unit have a propensity or intent to engage in homosexual acts and others do not.  These same

concerns for privacy and sexual tension explain the military's policy of providing service men and

women with separate living quarters."); <u>Richenberg</u>, 97 F.3d at 262 ("Military leaders have

determined that excluding those with a propensity to engage in homosexual acts, like providing

separate housing for men and women, reduces sexual tensions that would jeopardize unit cohesion,

the cornerstone of an effective military. * * *  Given these rational concerns, Congress and the President may rationally exclude those with a propensity or intent to engage in homosexual acts.").

Indeed, plaintiffs' insistence that <u>Lawrence</u> undermines previous decisions upholding § 654 against constitutional challenge is of a piece with previous arguments by parties challenging the Act, who contended that the Supreme Court's decisions in <u>Romer</u>, <u>City of Cleburne</u> v. <u>Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439 (1985), and <u>Palmore</u> v. <u>Sidoti</u>, 466 U.S. 429 (1984), required invalidation of the statute.  The Second Circuit rejected that very argument in <u>Able II</u>, holding that those cases did not implicate the special circumstances and unique needs of the Armed Forces:

> In this case, plaintiffs' reliance on <u>Romer</u>, <u>Cleburne Living Ctr.</u> and <u>Palmore</u> is misplaced.  Those cases did not arise in the military setting.  In the civilian context, the Court was willing to examine the benign reasons advanced by the government to consider whether they masked an impermissible underlying purpose.  In the military setting, however, constitutionally-mandated deference to military assessments and judgments gives the judiciary far less scope to scrutinize the reasons, legitimate on their face, that the military has advanced to justify its actions.
>
> Moreover, in this case the military's justifications are based on factors which are unique to military life.  The military argues that the prohibition on homosexual conduct is necessary for military effectiveness because it maintains unit cohesion, reduces sexual tension and promotes personal privacy.  These concerns distinguish the military from civilian life and go directly to the military's need to foster 'instinctive obedience, unity, commitment, and esprit de corps.'

<u>Able II</u>, 155 F.3d at 634 (quoting <u>Goldman</u> v. <u>Weinberger</u>, 475 U.S. 503, 507 (1986)).  Inasmuch as <u>Lawrence</u> also did not involve the special circumstances and unique needs of the Armed Forces, the Second Circuit's reasoning in <u>Able II</u> applies with equal force here.  <u>See</u> <u>Hensala</u> v. <u>Dept. of Air Force</u>, 343 F.3d 951, 959 n.1(9th Cir. 2003) (Tashima, J., concurring in part and dissenting in part) ("<u>Lawrence</u> does not impliedly overrule [the Ninth Circuit's decision in] <u>Holmes</u>.  <u>Holmes</u> was based on the special needs of the military, a subject that <u>Lawrence</u> does not address.  Thus, the two cases

-7-

are not 'closely on point,' and <u>Holmes</u> remains the law of the circuit.") (internal quotations and citations omitted); <u>Student Members of SAME</u> v. <u>Rumsfeld</u>, 321 F. Supp.2d 388, 395-96 (D. Conn. 2004) (although noting the plaintiffs' argument that the Solomon Amendment violated equal protection because it left them "marked with a stigma that the Supreme Court recognized as illegitimate in [<u>Lawrence</u>]," stating that "the Second Circuit has held the 'Don't Ask Don't Tell' policy to be constitutional, making plaintiffs' claim that recruiting functions associated with the policy are <u>un</u>constitutional dubious at best.") (emphasis in original).

3.   Plaintiffs' reliance (Opp. at 3, 7, 19-23) on <u>United States</u> v. <u>Marcum</u>, 60 M.J. 198 (C.A.A.F. 2004), also is misplaced.  The <u>Marcum</u> court expressly rejected the contention, advanced by plaintiffs here, that the Court in <u>Lawrence</u> identified the liberty interest at issue as fundamental. <u>See</u> <u>id</u>. at 205 ("In <u>Lawrence</u>, the Court did not expressly identify the liberty interest as a fundamental right.  Therefore, we will not presume the existence of such a fundamental right in the military environment when the Supreme Court declined in the civilian context to expressly identify such a fundamental right.").

Moreover, the <u>Marcum</u> case involved the question of whether a <u>criminal</u> prohibition in the Uniform Code of Military Justice ("UCMJ") could survive <u>Lawrence</u>, <u>see</u> 60 M.J. at 206 ("[T]his case presents itself to us as a challenge to a discrete criminal conviction based on a discrete set of facts."), an issue that most decidedly is <u>not</u> implicated by the Act.  <u>See</u> <u>Beller</u> v. <u>Middendorf</u>, 632 F.2d 788, 810 (9th Cir. 1980) (Kennedy, J.) ("The instant cases, however, are not ones in which the state seeks to use its <u>criminal</u> processes to coerce persons to comply with a moral precept even if they are consenting adults acting in private without injury to each other.  Instead, these appeals require an assessment of a military regulation which prohibits personnel from engaging in

-8-

homosexual conduct while they are in the service.") (emphasis added), *cert. denied*, 452 U.S. 905, 454 U.S. 855 (1981).  And the <u>Marcum</u> court expressly recognized that there might be "additional factors relevant solely in the military environment that affect the nature and reach of the <u>Lawrence</u> liberty interest," including, potentially, consideration of § 654.  <u>See</u> 60 M.J. at 206.[3]  Consequently, the decision in <u>Marcum</u> has no bearing on the constitutionality of § 654.

## II.    THE QUESTION WHETHER § 654 SATISFIES RATIONAL BASIS REVIEW IS A LEGAL QUESTION THAT MAY BE RESOLVED ON A MOTION TO DISMISS

Plaintiffs alternatively insist (Opp. at 2-3, 12-14) that dismissal of this lawsuit is inappropriate because defendants have not satisfied the Rule 12(b)(6) standard, arguing that "[t]he Court cannot analyze whether section 654's infringement of Plaintiff's liberty interests is rationally related to a legitimate state interest * * * on a motion to dismiss, because there are factual disputes as to <u>both</u> the nature and extent of the infringement and the legitimacy of the supposed 'interests' that Defendants claim justify their discrimination."  Plaintiffs request (Opp. at 5) the "opportunity to prove their claims on a complete factual record."  None of these arguments have merit.

**1.**  As we showed in our opening memorandum (U.S. Mem. at 21-22), classifications subject to rational basis review must be sustained "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  <u>Heller</u>, 509 U.S. at 320.  Rational basis review is "a paradigm of judicial restraint" and does not provide "a license for courts to judge the wisdom, fairness, or logic of legislative choices."  <u>Beach Communications</u>, 508 U.S. at 313-14 (citation omitted).  Thus, the Government "has no obligation to produce evidence to sustain the rationality"

---

[3]  Ultimately, because the <u>Marcum</u> court held that the defendant's conduct in that case fell outside the liberty interest identified in <u>Lawrence</u>, the court saw no need to consider "what impact, if any, 10 U.S.C. § 654 would have on the constitutionality of Article 125 as applied in other settings."  60 M.J. at 208.

of an Act of Congress, Heller, 509 U.S. at 320; to the contrary, "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." Beach Communications, 508 U.S. at 320-21.

Plaintiffs therefore err in suggesting that the question of whether the Act satisfies rational basis review is a proper subject of discovery. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." Heller, 509 U.S. at 320 (emphasis added). In this case, the publicly-available Congressional record itself establishes that the Act rationally furthers the government's interests in maintaining unit cohesion, reducing sexual tension. As the Second Circuit concluded in Able II:

> Given the strong presumption of validity we give to classifications under rational basis review and the special respect accorded to Congress's decisions regarding military matters, we will not substitute our judgment for that of Congress. We find that Congress has proffered adequate justifications for the Act. The testimony of numerous military leaders, the extensive review and deliberation by Congress, and the detailed findings set forth in the Act itself provide a 'reasonably conceivable state of facts,' to uphold the Act.

155 F.3d at 636 (emphasis added) (quoting Heller, 509 U.S. at 320) (internal citation omitted).

Plaintiffs' suggestion that there is something unusual or improper about determining whether the Act satisfies rational basis review on a motion to dismiss therefore is quite mistaken. Courts regularly determine whether a statute satisfies rational basis review on motions to dismiss for failure to state a claim. See, e.g., Gregory v. Ashcroft, 501 U.S. 452, 470-73 (1991) (affirming dismissal for failure to state a claim of equal protection challenge to mandatory retirement provision of Missouri Constitution for state judges); Walker v. Exeter Region Coop. School Dist., 284 F.3d 42, 44-47 (1st Cir. 2002) (affirming dismissal for failure to state a claim of equal protection challenge to statute establishing vote requirements for issuance of bonds in certain New Hampshire school

-10-

districts).  To take but one recent example, in a case which also involved a constitutional challenge to an Act of Congress dealing with military affairs -- the Military Selective Service Act ("MSSA"), 50 U.S.C. App. §§ 451-473 -- Judge Harrington granted the government's motion to dismiss for failure to state a claim.  <u>See</u> <u>Schwartz</u> v. <u>Brodsky</u>, 265 F. Supp.2d 130, 132-35 (D. Mass. 2003).  In doing so, Judge Harrington  reasoned that:  "If a deeply-rooted military tradition of male-only draft registration is to be ended, it should be accomplished by that branch of government which has the constitutional power to do so and which best represents the 'consent of the governed'--the Congress of the United States, the elected representatives of the people."  <u>Id</u>. at 135.  Judge Harrington's persuasive analysis applies with equal force to this case.

**2.**  Nor are plaintiffs correct in arguing (Opp. at 15-16) that, because they "have alleged <u>as fact</u> that the presence of gay men and lesbians in the Armed Forces does not pose any risk to unit cohesion, military morale, good order, or discipline," that "[t]hat allegation <u>alone</u> requires denial of a motion to dismiss."  The question whether the interests underlying § 654 satisfies rational basis review is a quintessentially <u>legal</u> question, and plaintiffs cannot avoid dismissal by merely making conclusory allegations that the statute serves no governmental interest or was unsupported by the record before Congress.  To the contrary, it has long been settled that, "[b]ecause only well-pleaded facts are taken as true, we will not accept a complainant's unsupported conclusions or interpretations of law."  <u>Washington Legal Found.</u> v. <u>Massachusetts Bar Found.</u>, 993 F.2d 962, 971 (1st Cir. 1993).

**3.**  Plaintiffs also emphasize (Opp. at 2, 16) that "the Complaint alleges that during wartime -- when military effectiveness is most crucial -- the military has delayed or dramatically reduced discharges under section 654."  The problem with this argument is that plaintiffs' allegation (Complaint ¶ 49) that, "[d]uring the 1991 Gulf War, the Department of Defense announced that the

discharge of known gay personnel could be 'deferred' until those personnel were no longer needed," quite obviously says nothing about discharges under § 654, which was enacted in 1993.[4] And, even assuming the truth of plaintiffs' allegations regarding discharges in 2002 and 2003, as we must on a motion to dismiss, they are of no moment, for "the governmental interest in a piece of legislation is necessarily fixed at the time of its passage." Schwartz, 265 F. Supp.2d at 133.[5]

**4.** Plaintiffs fare no better in complaining (Opp. at 2-3, 12, 16) that "[d]efendants ignore the detailed allegations concerning the service records and experiences of each of Plaintiffs as well as the as-applied and facial operation of section 654," or asserting that "the military professionals who served with Plaintiffs concluded that their 'presence' contributed to -- and was not in any sense a 'threat' or 'risk' to -- the military and our national defense." It has long been settled that, under rational basis review, "the constitutionality of state classifications * * * cannot be determined on a person-by-person basis," Kimel, 528 U.S. at 85-86, and a statute "does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it

---

[4]  Moreover, this allegation has already been disproven on the public record. See Steffan v. Cheney, 1991 WL 155811, at ** 1, 2 (D.D.C. Aug. 1, 1991) (noting Army headquarters directives which stated that "[h]omosexuals will remain at the mobilization station and be processed for separation [in accordance with]" governing regulations, and that "Army policy is clear and remains unchanged. Military members who claim homosexuality will be neither processed for deployment nor deployed. They will be expeditiously processed for discharge [in accordance with the appropriate regulation] * * * and will be separated forthwith.").

[5]  Indeed, courts have held that "[a] congressional decision that a statute is unfair, outdated, and in need of improvement does not mean that the statute when enacted was wholly irrational or, for purposes of rational basis review, unconstitutional." Smart v. Ashcroft, 401 F.3d 119, 123 (2d Cir. 2005); see also Howard v. U.S. Dept. of Defense, 354 F.3d 1358, 1361-62 (Fed. Cir. 2004) ("Congress acts based on judgments as to preferable policy; the fact that Congress repeals or modifies particular legislation does not reflect a judgment that the legislation, in its pre-amendment is not well founded. If the concurrent receipt prohibition was rational in 1986, * * * it is equally rational now, even though Congress has chosen to alter it."). In this case, of course, Congress has not repealed, modified, or otherwise altered § 654.

results in some inequality." <u>Dandridge</u> v. <u>Williams</u>, 397 U.S. 471, 485 (1970) (internal quotation omitted).[6] Thus, as then-Judge Kennedy analyzed in <u>Beller</u>, the government is not required "to show with particularity that the reasons for the general policy of discharging homosexuals from the Navy exist in a particular case before discharge is permitted." 632 F.2d at 808 n.20.

**5.** Plaintiffs also argue (Opp. at 29 & n.13) that the presumption in § 654 is irrebuttable, and contend that this Court should not rely on cases finding to the contrary on the ground that "[i]t is inappropriate, on a motion to dismiss, for the Defendants to ask the Court to draw factual conclusions about the current practice of discharge hearings by relying on conclusion drawn seven years ago by another court, on a different factual record." That, too, is incorrect. Plaintiffs' argument "ignores the statutory language," <u>Richenberg</u>, 97 F.3d at 262, and implementing DoD Directives, which make clear that a service member may rebut the presumption.

Moreover, courts have expressly found that service members have successfully rebutted the presumption, <u>see</u> <u>Holmes</u>, 124 F.3d at 1135-36; <u>Richenberg</u>, 97 F.3d at 262; <u>Able I</u>, 88 F.3d at 1298, and, as one district court has correctly analyzed, "the fact that at least one service member rebutted the presumption without disavowing his statement of homosexuality * * * fatally undercuts Thorne's facial constitutional challenge." <u>Thorne</u> v. <u>U.S. Dept. of Defense</u>, 945 F. Supp. 924, 929 (E.D. Va. 1996), <u>aff'd</u>, 139 F.3d 893 (4th Cir.), <u>cert. denied</u>, 525 U.S. 947 (1998). Nor can plaintiffs avoid this conclusion by asserting that they also have pled an as-applied challenge to the Act. If plaintiffs mean

---

[6] The government thus may fashion general employment policies that, in individual cases, might be overinclusive or underinclusive without running afoul of the Constitution. <u>See</u> <u>New York City Transit Auth.</u> v. <u>Beazer</u>, 440 U.S. 568, 589-92 (1979) (upholding policy barring methadone users from employment); <u>Vance</u> v. <u>Bradley</u>, 440 U.S. 93, 106 (1979) (upholding mandatory retirement age for Foreign Service personnel); <u>Massachusetts Bd. of Retirement</u> v. <u>Murgia</u>, 427 U.S. 307, 314-17 (1976) (per curiam) (upholding mandatory retirement age for police officers).

to argue that the presumption was irrebuttable in one or more of their individual cases, that claim would be a challenge to the military's <u>application</u> of the policy, which would arise under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701-706. <u>See</u>, <u>e.g.</u>, <u>Richenberg</u>, 97 F.3d at 263-64. The problem for the plaintiffs is that they have not pled a cause of action under the APA.

**6.** Finally, there is no merit to plaintiffs' contention (Opp. at 31-34) that deference to Congress is inappropriate because, in their Complaint, they "alleged that the challenged statutes and regulations 'serve[] no legitimate government or military interest' and that Congress's judgments were 'unsupported by the evidence before Congress.'" Once again, the question whether the Act satisfies rational basis review is a <u>legal</u> question that is not subject to courtroom factfinding, <u>see</u> <u>Heller</u>, 509 U.S. at 320, and conclusory allegations to the contrary are insufficient to defeat a motion to dismiss, <u>see</u> <u>Washington Legal Found.</u>, 993 F.2d at 971.

Plaintiffs' assertion (Opp. at 32) that the RAND Report and two Department of Defense reports "contradicted" Congress's finding also misses the mark. If plaintiffs mean to suggest that Congress was unaware of these reports, they are plainly mistaken. Members of Congress -- including both supporters and opponents of the draft legislation -- discussed and/or critiqued the RAND report and the two PERSEREC reports during the Senate[7] and House[8] floor debates.

If, on the other hand, plaintiffs are contending that Congress should not have enacted § 654 in the face of these reports, the complete answer is that plaintiffs' disagreement with Congress's

---

[7] <u>See</u>, <u>e.g.</u>, 139 Cong. Rec. S11173-74 (Sept. 9, 1993) (statement of Sen. Nunn) (discussing RAND Report); <u>id</u>. at S11197-98 (statement of Sen. Kennedy) (discussing RAND and PERSEREC reports); <u>id</u>. at S11204 (statement of Sen. Feingold) (discussing RAND and PERSEREC reports).

[8] <u>See</u>, <u>e.g.</u>, 139 Cong. Rec. H7069-70 (Sept. 28, 1993) (statement of Rep. Kyl) (discussing RAND report); <u>id</u>. at H7077 (statement of Rep. Studds) (discussing RAND Report and PERSEREC reports); <u>id</u>. at H7082 (statement of Rep. Schroeder) (discussing RAND Report).

judgment is "quite beside the point." Goldman, 475 U.S. at 509. A court has no warrant to "substitute [its] judgment of what is desirable for that of Congress, or [its] own evaluation of evidence for a reasonable evaluation by the Legislative Branch." Rostker, 453 U.S. at 68. "The Constitution gives to Congress the role of weighing conflicting evidence in the legislative process," and the courts "are not to 're-weigh the evidence *de novo*, or to replace Congress' factual predictions with [their] own.'" Turner Broadcasting System, Inc. v. FCC, 520 U.S. 180, 199, 211 (1997) (emphasis added) (quoting Turner Broadcasting v. FCC, 512 U.S. 622, 666 (1994)). Plaintiffs' contention that "Congress's judgment were 'unsupported by the evidence before Congress,'" cannot be squared with these governing principles. At most, plaintiffs can show only that reasonable minds might differ, hardly an adequate basis for overturning Congress' studied policy choice.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in our opening memorandum, the Court should enter judgment in favor of defendants, uphold the constitutionality of § 654 and the implementing DoD regulations, and dismiss this action with prejudice.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ Mark T. Quinlivan
MARK T. QUINLIVAN
Assistant United States Attorney
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
617-748-3606

Dated: April 12, 2005