# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

THOMAS COOK; MEGAN DRESCH;
LAURA GALABURDA; JACK GLOVER;
DAVID HALL; MONICA HILL; JENNY
LYNN KOPFSTEIN; JENNIFER McGINN;
JUSTIN PEACOCK; JAMES E.
PIETRANGELO II; DEREK SPARKS;
STACY VASQUEZ,

                                Plaintiffs,

v.

DONALD H. RUMSFELD, Secretary of
Defense; TOM RIDGE, Secretary of
Homeland Security; UNITED STATES OF
AMERICA,

                                Defendants.

Civil Action No. 04-12546 GAO

## CONSENT MOTION FOR LEAVE TO FILE SURREPLY

Plaintiffs Thomas Cook, Megan Dresch, Laura Galaburda, Jack Glover, David Hall,

Monica Hill, Jenny Lynn Kopfstein, Jennifer McGinn, Justin Peacock, James E. Pietrangelo II,

Derek Sparks, and Stacy Vasquez (collectively "Plaintiffs"), respectfully move for leave to file a

surreply in support of their Opposition to Defendants' Motion to Dismiss (Docket Entry No. 12).

In support of this motion, Plaintiffs state as follows:

1.       With leave of Court, Defendants Donald H. Rumsfeld, Michael Chertoff, and

United States of America (collectively "Defendants") filed a reply brief in support of their

motion to dismiss for failure to state a claim upon which relief can be granted in the above-

captioned action on April 12, 2005. In Defendants' motion for leave to file that reply,

Defendants stated that they would consent to a motion by Plaintiffs to file a surreply.

2.      Plaintiffs hereby request leave to file a surreply of no more than 15 pages to address issues raise in Defendants' reply.  Plaintiffs believe a surreply will be helpful to the Court in deciding the issues presented in the pending motion to dismiss.

3.      On April 29, 2005, counsel for Plaintiffs, Matthew A. Stowe, inquired of counsel for Defendants, Assistant U.S. Attorney Mark T. Quinlivan, whether Defendants would consent to this motion.  Mr. Quinlivan responded that Defendants would consent to this motion, and, on April 29, 2005, stated in an electronic mail message that he had reviewed and consented to this motion.

WHEREFORE, with good cause having been shown, Plaintiffs respectfully request that this Court grant them leave to file a surreply of no more than 15 pages in support of their Opposition to Defendants' motion to dismiss.  The proposed surreply is set forth in the attachment to this electronically filed motion.

Respectfully submitted,
**THOMAS COOK; MEGAN DRESCH; LAURA GALABURDA; JACK GLOVER; DAVID HALL; MONICA HILL; JENNY LYNN KOPFSTEIN; JENNIFER McGINN; JUSTIN PEACOCK; JAMES E. PIETRANGELO II; DEREK SPARKS; STACY VASQUEZ,**

By their attorneys,

Dated: May 3, 2005

/s/ Matthew A. Stowe
Jonathan A. Shapiro (BBO #567838)
Maura T. Healey (BBO #640856)
Matthew A. Stowe (BBO #650473)
Louis W. Tompros (BBO #657791)
WILMER CUTLER PICKERING HALE AND
   DORR LLP
60 State Street
Boston, Massachusetts  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

Stuart F. Delery
Alison Nathan
WILMER CUTLER PICKERING HALE AND
  DORR LLP
2445 M Street, NW
Washington, D.C.  20037
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

Sharra E. Greer
Kathi S. Westcott
Sharon E. Debbage Alexander
SERVICEMEMBERS LEGAL DEFENSE NETWORK
P.O. Box 65301
Washington, DC  20035
(202) 328-3244
(202) 797-1635 (Fax)

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1(a)(2)

Pursuant to Local Rule 7.1(a)(2), I certify that on April 29, 2005, I conferred with

counsel for the Defendants, Mark T. Quinlivan, Esq., regarding this motion; that Mr. Quinlivan

graciously responded that Defendants would consent to this motion; and that, on April 29, 2005,

Mr. Quinlivan stated in an electronic mail message that he had reviewed and consented to this

motion.

/s/ Matthew A. Stowe_____

**CERTIFICATE OF SERVICE**

I, Matthew A. Stowe, hereby certify that I caused a copy of the within document to be served by electronic notification upon:

> Mark T. Quinlivan
> Assistant United States Attorney
> United States Attorney's Office
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 9200
> Boston, MA  02210

> /s/ Matthew A. Stowe_____
> Matthew A. Stowe

Dated:  May 3, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Thomas Cook; Megan Dresch; Laura
Galaburda; Jack Glover; David Hall; Monica
Hill; Jenny Lynn Kopfstein; Jennifer McGinn;
Justin Peacock; James E. Pietrangelo II; Derek
Sparks; Stacy Vasquez,

        Plaintiffs,

        v.

Donald H. Rumsfeld, Secretary of Defense;
Michael Chertoff, Secretary of Homeland
Security; United States of America,

        Defendants.

Civil Action No. 04-12546 GAO

## SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Jonathan A. Shapiro (BBO #567838)
Maura T. Healey (BBO #640856)
Matthew A. Stowe (BBO #650473)
Louis W. Tompros (BBO #657791)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000
(617) 526-5000 (Fax)

Sharra E. Greer
Kathi S. Westcott
Sharon E. Debbage Alexander
SERVICEMEMBERS LEGAL DEFENSE NETWORK
P.O. Box 65301
Washington, DC  20035
(202) 328-3244
(202) 797-1635 (Fax)

Stuart F. Delery
Alison J. Nathan
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2445 M Street NW
Washington, DC  20037
(202) 663-6000
(202) 663-6363 (Fax)

May 2, 2005

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

I.  Argument ..................................................................................................... 1

    1.  Defendants Cannot Diminish the Level of Scrutiny That *Lawrence* Requires. ............. 1

    2.  Even Under Defendants' Incorrect Rational Basis Standard, Plaintiffs State a Claim. .................................................................................................... 3

    3.  Congress's Opinions About the Constitution Do Not Control. ...................................... 6

    4.  *Marcum* Confirms that *Lawrence* Applies to the Military. ............................................ 7

    5.  Plaintiffs' Well-Pleaded Complaint Exceeds the Requirement of Rule 8(a). ................. 8

    6.  The Military's Own Application – and When Expedient, Disregard – of Section 654 Is Relevant to the Required Constitutional Inquiry. ....................................... 11

    7.  Plaintiffs Have Stated a Claim for Violation of the First Amendment That Does Not Require Exhaustion of Administrative Procedures. ....................................... 13

II.  Conclusion................................................................................................... 15

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Able v. United States*, 155 F.3d 628 (2d Cir. 1998) ....................................................... 7

*Able v. United States*, 88 F.3d 1280 (2d Cir. 1996) ..................................................... 14

*Becker v. Federal Election Comm'n*, 112 F. Supp. 2d 172 (D. Mass. 2000)................................ 14

*Boston & Maine Corp. v. Town of Hampto*n, 987 F.2d 855 (1st Cir. 1993) ................................... 9

*Califano v. Saunders*, 430 U.S. 99 (1977) ................................................................... 14

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ........................................... 4, 5, 6

*Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94 (1973) ............................... 7

*Fullilove v. Klutznick*, 448 U.S. 448 (1980) ................................................................ 4

*Grutter v. Bollinger*, 539 U.S. 306 (2003) ................................................................. 13

*Heller v. Doe*, 509 U.S. 312 (1993) ....................................................................... 4, 9

*Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002) ............................................................ 10

*In re Carbon Black Antitrust Litig.*, No. 03-101912005 WL 102966 (D. Mass. Jan. 18, 2005) .. 10

*Lamprecht v. FCC*, 958 F.2d 382 (D.C. Cir. 1992) ......................................................... 6

*Langadinos v. American Airlines, Inc.*, 199 F.3d 68 (1st Cir. 2000) ....................................... 10

*Lawrence v. Texas*, 539 U.S. 558 (2003) .............................................................. *passim*

*Maduka v. Sunrise Hosp.*, 375 F.3d 909 (9th Cir. 2004) ................................................. 10

*Meinhold v. United States Dep't of Defense*, 34 F.3d 1469 (9th Cir. 1994).................................. 14

*O'Neill v. Dell Pub. Co.*, 630 F.2d 685 (1st Cir. 1980) .................................................... 9

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992)........................................................... 13

*Richenberg v. Perry*, 909 F. Supp. 1303 (D. Neb. 1995), *aff'd*, 97 F.3d 256 (8th Cir. 1996)......... 7

*Romer v. Evans*, 517 U.S. 620 (1996)................................................................... 3, 4, 5

*Rostker v. Goldberg*, 453 U.S. 57 (1981)................................................................. 12

*Sable Communications v. FCC*, 492 U.S. 115 (1989)........................................................ 6

*Schaffner v. Barnhart*, No. 03-266-P-S, 2004 WL 1941344 (Aug. 31, D. Me. 2004).................. 10

*Schowengerdt v. United States*, 944 F.2d 483 (9th Cir. 1991) ........................................ 7

*Schwartz v. Brodsky*, 265 F. Supp. 2d 130 (D. Mass. 2003) ........................................ 12

*Steffan v. Cheney*, 733 F. Supp. 115 (D.D.C. 1989) ........................................ 14

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) ........................................ 9, 10

*Thomasson v. Perry*, 80 F.3d 915 (4th Cir. 1996) ........................................ 7

*Torres Ocasio v. Melendez*, 283 F. Supp. 2d 505 (D.P.R. 2003) ........................................ 10

*United States v. Employing Plasterers Ass'n*, 347 U.S. 186 (1954) ........................................ 10

*United States v. Marcum*, 60 M.J. 198 (C.A.A.F. 2004) ........................................ 7, 8

*United States v. Virginia*, 518 U.S. 515 (1996) ........................................ 13

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ........................................ 6

*Warren v. District of Columbia*, 353 F.3d 36 (D.C. Cir. 2004) ........................................ 9

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ........................................ 1, 2, 6

*Watson v. Perry*, 918 F. Supp. 1403, 1411 (W.D. Wash. 1996), *aff'd* 124 F.3d 1126, *reh'g denied* 155 F.3d 1049, *cert. denied* 119 S.Ct. 794 ........................................ 14

*Wessman v. Gittens*, 160 F.3d 790 (1st Cir. 1998) ........................................ 9

Federal Statutes

10 U.S.C. § 654 ........................................ *passim*

5 U.S.C. § 701 ........................................ 14

Other Authorities

Laurence H. Tribe, *Lawrence v. Texas: The "Fundamental Right" That Dare Not Speak Its Name*, 117 Harv. L. Rev. 1893 (2004) ........................................ 3

Wright & Miller, Fed. Practice & Proc. § 1218 (3d ed. & supp 2005) ........................................ 9, 10

**ARGUMENT**

**1.  Defendants Cannot Diminish the Level of Scrutiny That *Lawrence* Requires.**

Defendants frame the entire argument in their Reply with the faulty premise that this Court must apply only the least searching form of judicial review – the rational basis test – and make no attempt to argue that section 654 could survive any greater scrutiny.  (Reply at 4.)  As Plaintiffs have argued, section 654 fails even minimal scrutiny.  (Opp. at 13-19.)  For at least three reasons, however, this Court should not follow Defendants' suggestion to avoid the plain import of the Supreme Court's rulings in *Lawrence v. Texas*, 539 U.S. 558 (2003).

*First*, Defendants are wrong to claim in the Reply that a "careful examination of the language used by the Court in *Lawrence* compels the conclusion that the Court applied rational basis review."  (Reply at 4.)  Nowhere does Defendants' "careful examination of the language" address passage after passage of the sweeping language used in *Lawrence* – instead Defendants isolate a single *clause* in the opinion in which the majority concludes the Texas statute in issue "furthers no legitimate state interest."  (Reply at 4-5 (quoting *Lawrence*, 539 U.S. at 578)).  This is *not* a statement of the rational basis test, which asks whether a law is "rationally related to [a] legitimate state interest[]."  *Washington v. Glucksberg*, 521 U.S. 702, 708 (1997).

Far from suggesting that there was no rational relationship between the asserted interest and the restriction on liberty or that any "legitimate state interest" would have sufficed, the *Lawrence* Court's reference was to a "legitimate state interest *which can justify its intrusion into the personal and private life of the individual*," 539 U.S. at 578 – an intrusion that the Court concluded earlier in the opinion was of enormous significance.  *See, e.g.*, *id.* at 578 (describing "full right" that can be pursued "without intervention of the government"); *id.* at 562 ("transcendent dimensions" of liberty); *id.* at 574 ("the heart of liberty"); *id.* at 577 ("an integral part of human freedom").  The intrusiveness of a law is of no moment when rational basis review is applied under the Due Process

Clause and was of no concern when the Court wrongly decided *Bowers* under that standard.  *See also Glucksberg*, 521 U.S. at 722-51 (in entire Due Process analysis not even discussing effect on plaintiff who wished to end life and suffering when considering rationality of law).   Moreover, as Plaintiffs showed in the Opposition, Texas argued only that its interest was "legitimate."  (Opp. at 21-22 n.11.); *Lawrence v. Texas*, 41 S.W.3d 349, 383 (Tex. App. 2001) ("[C]ounsel for the State conceded at oral argument that he could not 'even see how he could begin to frame an argument that there was a compelling State interest,' much less demonstrate that interest.").  In that context, the Court's statement was merely a rejection of the only argument before it: the Court determined that the interest put forward by the state was not *even* a legitimate interest.  Simply put, therefore, *Lawrence*'s careful balancing of the state's interest against the burden on the constitutional right at stake is inconsistent with the deferential form of rational basis review that Defendants claim this Court must employ. [1]

*Second*, Defendants are incorrect that *Lawrence* requires only the least searching form of judicial scrutiny because the term "fundamental right" cannot be found in the opinion.  (Reply at 1.) The only support for that argument is found in Justice Scalia's *dissent*, in which he contended that the majority left untouched *Bowers*' conclusion that there is no "fundamental right to engage in homosexual sodomy."  *Lawrence*, 539 U.S. at 586 (Scalia, J., dissenting).  The *majority*, however, addressed and *rejected* this assertion when it stated that the framing of the right in *Bowers* "fail[ed] to appreciate the extent of the liberty at stake."  *Id* at 567.  Moreover, the Court explicitly placed the right at issue in a clear jurisprudential line of fundamental rights cases – *Griswold*, *Eisenstadt*, *Casey*, and *Roe*. *Id.* at 564-67; *id.* at 564 (finding *Griswold* to be "the most pertinent beginning

---

[1]     Even Justice Scalia in his dissenting opinion in *Lawrence* – in attempting coherently to explain why the majority was not recognizing a fundamental right, despite countless indications that it was – conceded that the "rational basis test" he asserted the majority employed was no run-of-the-mill version of the test.  *Lawrence*, 539 U.S. at 586 (Scalia, J. dissenting) (the majority "proceeds to apply an unheard-of form of rational-basis review that will have far-reaching implications beyond this case").

point"). Defendants' approach reads out of *Lawrence* the Court's threshold statement that it was dealing with a "protection of liberty under the Due Process Clause [that] has a substantive dimension of fundamental significance in defining the rights of the person." *Id.* at 565.

*Third*, the Reply's simplistic appeal for "rational basis" review fails to recognize that the Supreme Court's approach to due process claims does not ritualistically categorize claims as either fundamental right/strict scrutiny or no fundamental right/rational basis. As commentators since *Lawrence* have noted, "[t]o search for the magic words proclaiming the right protected in *Lawrence* to be 'fundamental,' and to assume that in the absence of those words mere rationality review applied, is to universalize what is in fact only an occasional practice." *See, e.g.*, Laurence H. Tribe, *Lawrence v. Texas: The "Fundamental Right" That Dare Not Speak Its Name*, 117 Harv. L. Rev. 1893, 1917 (2004) (noting, for example, that no rigid standard was announced by the Court in *Griswold*). Thus, whatever label one attributes to the scrutiny required under *Lawrence*, it is plainly more than a standard rational basis analysis (even though Plaintiffs satisfy that as well).

## 2. Even Under Defendants' Incorrect Rational Basis Standard, Plaintiffs State a Claim.

Even if Defendants could downgrade *Lawrence* to minimal rational basis analysis, they still have no cogent response to Plaintiffs' extensive argument that the Complaint states a claim under that standard. Defendants do not (and cannot) dispute that, even under the most deferential rational basis standard, controlling Supreme Court precedent requires invalidation of section 654 because it serves only animus. *See Romer v. Evans*, 517 U.S. 620, 632-36 (1996); *Lawrence*, 539 U.S. at 580 ("When a law exhibits such a desire to harm a politically unpopular group, [the Court has] applied a more searching form of rational basis review to strike down such laws.") (O'Connor J., concurring) (citing cases). Nor can Defendants dispute that a law is not immune from constitutional scrutiny simply because the legislature identified non-animus interests when approving the law. *See Romer*, 517 U.S. at 635 (invalidating amendment, despite state's identification of non-animus interests the

3

amendment purported to serve, because "[t]he breadth of the amendment [was] so far removed" from the identified interests). Defendants suggest that it is unnecessary for this Court to "search for the link between" section 654's classification and its objective – i.e., to engage in the analysis required by the Supreme Court – because they say "the publicly-available Congressional record itself establishes that the Act rationally furthers the government's interests." (Reply at 10.) But, if the mere recitation of the government's stated purpose in enacting legislation were enough to scuttle a rational basis challenge, the Supreme Court in *Romer* would not have conducted a "search for the link between" the classification drawn by the challenged amendment and its objective, *id.* at 632 (this required analysis "gives substance to the Equal Protection Clause"), and in *Cleburne* would not have considered the credibility of reasons offered or how attenuated they were to the classification at issue. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448-50 (1985).

Defendants then go further afield by suggesting the required constitutional analysis would somehow be an impermissible attack on "'legislative choice.'" (Reply at 10 (quoting *Heller v. Doe*, 509 U.S. 312 (1993)).[2] That unsupported constitutional immunity theory finds no support in the law, and certainly does not allow Defendants simply to ignore Plaintiffs' allegations that section 654 was enacted to serve (and is applied selectively in furtherance of) animus against gays and lesbians. *See Fullilove v. Klutznick*, 448 U.S. 448, 473 (1980) ("in no sense" does the fact that a statute was the "considered decision of the Congress and the President . . . render it immune from

---

[2]       Defendants' reliance upon *Heller*, a case decided on summary judgment and not a motion to dismiss, is misplaced. In *Heller's* posture, the Court refused to consider the question of whether heightened scrutiny applied because it had not been preserved below. Moreover, there was no claim that animus was motivating the statute. Even in that context, the Court did *not* hold that discovery was inappropriate or that a motion to dismiss should have been granted. Rather, the Court noted that in the rational basis context the burden was on the litigant challenging the legislation to prove that the law bore no rational relationship to a legitimate state interest. *Heller*, 509 U.S. at 320. Surely, the implication of this is that the Plaintiff was entitled to discovery of evidence and the creation of a record that could meet that burden.

judicial scrutiny, and it is not to say we defer to the judgment of the Congress on a constitutional question") (internal citations and punctuation omitted).

Defendants also overreach by claiming that there could never be a set of facts or an application of section 654 that could ever give rise to a proper constitutional challenge. Specifically, without reference to the content of any plaintiff-specific allegation, Defendants disregard *every* allegation by the twelve plaintiffs as an impermissible attempt by plaintiffs to determine the constitutionality of a statute on a "person-by-person basis." (Reply at 12.) This is wrong for two reasons.

*First*, the plaintiff-specific factual allegations (Compl. ¶¶ 63-153) support the claim that the "sheer breadth" of section 654 is "so discontinuous with the reasons offered for it that [it] seems inexplicable by anything but animus toward" gays and lesbians (*Id.* ¶¶ 4, 49-50). *Romer*, 517 U.S. at 632; Opp. at 15-17, 24-26. Plaintiffs' allegations concerning animus – which are supported by the allegations describing plaintiffs' individual discharges – alone state a claim under *Romer*. The plaintiff-specific allegations that Defendants ignore also make plain that the fit between the classification of section 654 and its purported *non-animus* objectives is unconstitutionally attenuated, (*see* Opp. at 16, 25 (citing Compl. ¶¶ 82, 86-87, 112-14, 138-39)), not just that the fit is mathematically imprecise.[3] This states a claim under even the conventional rational basis precedent. *See City of Cleburne*, 473 U.S. 432. Plaintiffs also pled facts – again, supplemented by plaintiff-specific allegations – demonstrating that the military has at times actually refused to

---

[3]       Defendants, seemingly highlighting that they simply disagree with *Romer*, parrot Justice Scalia's dissent in that case by arguing that the section 654 is constitutional, despite the lack of an actual fit between the classification and its objectives, because classifications are not required to be made with "mathematical nicety." *Compare* Reply at 12 *with Romer*, 517 U.S. at 642 (Scalia, J., dissenting). The Complaint did not allege, however, that section 654 is simply "imprecise." It alleged that there is "no credible evidence" that it serves its supposed objectives, Compl. ¶ 4; that the military retains gays and lesbians during times of conflict when the need for unit cohesion is greatest, *id*. ¶ 49; and that various Plaintiffs thrived even after their sexual orientation became known to the military, *see id*. 82, 86-87, 112-14, 138-39. These allegations, taken as true, amply support that the "fit" between the classification and objective is unconstitutionally attenuated. (*See* Opp. at 15.)

enforce section 654 *in furtherance* of the same interests its application purportedly serves. (*See* Opp. at 2, 16, 25 (citing Compl. ¶¶ 49, 82, 86-87, 112-14, 138-39).) This further undercuts any claim of "fit." *See Cleburne*, 473 U.S. at 448-50.

*Second*, the plaintiff-specific allegations are sufficient to state as-applied claims, and it is no defense to such claims to complain that they amount to "person-by-person" challenges, which, by definition, they are. *See Glucksberg*, 521 U.S. at 751-52 (1997) (Stevens, J., concurring) (a finding that a statute is facially valid "does not foreclose the possibility that some applications . . . may impose an intolerable intrusion on . . . freedom"); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing "successful equal protection claims brought by a 'class of one'").

Having pleaded facts stating a claim, Plaintiffs are entitled to the discovery necessary to prove their claims. Defendants' contention that they are discovery-proof because the government is immune from constitutional challenges has no merit. (*Compare* Reply at 10 (section 654 was a "legislative choice" whose purpose and application cannot be inquired into by discovery, under any set of facts) *with* Opp. at 5 & n.3 (in every section 654 case upon which Defendants rely, plaintiffs had opportunity for discovery).)

### 3. Congress's Opinions About the Constitution Do Not Control.

Defendants cannot avoid *Lawrence* by reciting a statement by the Armed Services Committee that it would still want to exclude gay and lesbian service members even if the Supreme Court were to overturn *Bowers* (which it has now done). (Reply at 6.) That makes no sense. Congress's opinion that section 654 is constitutional does not in any sense preclude the court from holding otherwise. *See Sable Communications v. FCC*, 492 U.S. 115, 129 (1989) ("whatever deference is due legislative findings would not foreclose our independent judgment of the facts bearing on an issue of constitutional law"). Just as Congress cannot find that "black is white, or freedom, slavery," *Lamprecht v. FCC*, 958 F.2d 382, 392 n.2 (D.C. Cir. 1992), it cannot render an

6

unconstitutional statute constitutional by publicly stating its opinion that it would pass the statute irrespective of the courts' constitutional determinations. *See Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 103 (1973) (courts do not "'defer' to the judgment of the Congress . . . on a constitutional question").

Defendants also cannot claim that prior court decisions upholding section 654 did not depend on *Bowers*. Defendants assert that three cases upheld section 654 "without invoking or relying on *Bowers*." (Reply Mem. at 6.) But one of those cases denied a due process challenge on the basis of *Schowengerdt v. United States*, 944 F.2d 483 (9th Cir. 1991), which in turn had relied on *Bowers*. *See Richenberg v. Perry*, 909 F. Supp. 1303, 1313 (D. Neb. 1995), *aff'd*, 97 F.3d 256 (8th Cir. 1996). The other two *never addressed a substantive due process challenge at all,* but rather rejected equal protection challenges to section 654 on the ground that the class seeking protection was defined exclusively by its conduct, which conduct could be criminally punished under *Bowers*. *See Able v. United States*, 155 F.3d 628, 636 (2d Cir. 1998); *Thomasson v. Perry*, 80 F.3d 915, 928 (4th Cir. 1996). In fact, every prior circuit court opinion upholding section 654 did so on the strength of *Bowers*. (*See* Opp. at 5-7.).

### 4. *Marcum* Confirms that *Lawrence* Applies to the Military.

Defendants apparently have dropped their prior argument that *Lawrence* does not apply to the military, (Defs.' Mem. at 18-19), no doubt because the highest military court last year ruled that it does. *United States v. Marcum,* 60 M.J. 198 (C.A.A.F. 2004). Instead, Defendants now seek to trivialize *Marcum* with the false suggestion that it "expressly rejected" the claim that the liberty interest at issue in *Lawrence* was "fundamental." (Reply at 8.) This, too, is wrong. To the contrary, the *Marcum* court explained: "[T]he Supreme Court placed *Lawrence* within its liberty line of cases resting on the *Griswold* foundation. These cases treated aspects of liberty and privacy as fundamental rights, thereby, subjecting them to the compelling interest analysis." *Marcum*, 60

M.J. at 204 (citations omitted).  Indeed, *Marcum* noted that while some courts had applied rational basis review under *Lawrence,* "other courts have applied strict scrutiny."  *Id.*  Because "[t]he Supreme Court did not expressly state which test it used," the *Marcum* court similarly declined to "presume" that the liberty interest identified in *Lawrence* was fundamental.  *Id.* at 205.  However, it did hold that "[w]hat *Lawrence* requires is searching constitutional inquiry," and suggested that such an inquiry may "reach[] beyond the immediate facts of the case presented."  *Id.*  Clearly, the military's highest appellate court would not engage in a "searching" constitutional inquiry under *Lawrence* had it believed that *Lawrence* did not apply to it and/or required only rational basis review.

Defendants go on to assert that the *Marcum* court "expressly recognized" that "consideration of § 654" might "affect the nature and reach of the *Lawrence* liberty interest."  (Reply at 9.) *Marcum* recognized nothing of the sort.  The *Marcum* court was explicit that it did not need to "decide what impact, if any, 10 U.S.C. § 654 would have on the constitutionality of Article 125," the military sodomy statute before the court.  *Marcum*, 60 M.J. at 208.  If anything, the *Marcum* court noted the precarious constitutional position of section 654 after *Lawrence.*  In rejecting the Government's argument that section 654 demands "deference" in the form of constitutional abdication, the Court declined to rely on section 654 at all, noting that "Congress has indeed exercised its Article I authority to address homosexual sodomy in the Armed Forces, but this occurred prior to the Supreme Court's constitutional decision and analysis in *Lawrence* and at a time when *Bowers* served as the operative constitutional backdrop."  *Id.* at 206.

### 5.  Plaintiffs' Well-Pleaded Complaint Exceeds the Requirements of Rule 8(a).

Defendants ask this Court to ignore key allegations in the Complaint because they are "conclusory allegations" of "legal question[s]."  (Reply at 11 (emphasis omitted); *see also id.* at 14.) For starters, Defendants are incorrect that "whether the interests underlying § 654" satisfies the

requisite scrutiny "is a quintessentially *legal* question." (Reply at 11.) Although obviously the final

resolution of any lawsuit ultimately is a "legal" question, constitutional claims require the

application of law to *facts* as alleged by plaintiffs and proven at trial. Thus, as Plaintiffs

demonstrated, whether a statute satisfies rational basis review is a mixed question of fact and law,

(*see* Opp. at 14-15 (citing *Wessman v. Gittens,* 160 F.3d 790, 797-98 (1st Cir. 1998)), and the *one*

case Defendants cite on this point, *Heller v. Doe,* 509 U.S. 312 (1993), does not say otherwise.

Mixed questions of fact and law must be treated as factual issues for the purposes of a motion to

dismiss. *See Warren v. District of Columbia,* 353 F.3d 36, 40 (D.C. Cir. 2004) ("mixed questions of

law and fact… are treated like factual issues for the purposes of Rule 12(b)(6)."); *O'Neill v. Dell*

*Pub. Co.,* 630 F.2d 685, 687 (1st Cir. 1980) (for "a mixed question of fact and law, any factual

element of that issue must be decided in the trial court and reviewed on appeal as issues of fact are

decided and reviewed"). The drafters of the Federal Rules of Civil Procedure emphasized this point

in their example of a complaint for negligence (a widely recognized mixed question of law and

fact). That sample complaint offers only a bare assertion that "defendant negligently drove a motor

vehicle against plaintiff," with no explanation of why the conduct was negligent. *Swierkiewicz v.*

*Sorema N. A.,* 534 U.S. 506, 513 n.4 (2002) (quoting Fed. R. Civ. P. Form 9 and noting that such

allegations satisfy "the simple requirements of Rule 8(a).").

        Nor can Defendants defeat factual allegations by calling them "conclusory." Neither the

First Circuit nor the Supreme Court recognizes a distinction between "conclusory" and non-

conclusory allegations. *See Swierkiewicz,* 534 U.S. at 514-15; *Boston & Maine Corp. v. Town of*

*Hampton*, 987 F.2d 855, 865 (1st Cir. 1993) (noting that Rule 8 "embodies a sharp break from the

earlier practice of fact pleading" where courts ignored "conclusions of law."). In *Boston & Maine*

*Corp.,* the First Circuit cited with approval the Wright & Miller treatise, which notes that "the

federal rules do not prohibit the pleading of facts or legal conclusions as long as fair notice is given

9

to the parties."  Wright & Miller, Fed. Practice & Proc. § 1218 (3d ed. & supp 2005).  Although the

old common law pleading rules claimed to distinguish between "conclusory" allegations and other

allegations, "it was difficult, if not impossible, to draw meaningful and consistent distinctions

between or among 'evidence,' 'facts,' and 'conclusions.'"  *Id.*  Indeed, the Supreme Court recently

reversed a motion to dismiss in an employment discrimination suit, even though the complaint

contained only, as the Court described it, "conclusory allegations of discrimination."  *Swierkiewicz*,

534 U.S. at 514. [4]  As many courts in this Circuit have recognized, quibbles about "conclusory"

allegations are nothing more than illegitimate requests to deny Plaintiffs all reasonable inferences

that may be drawn from their complaints.  *See, e.g., In re Carbon Black Antitrust Litig.*, No. 03-

10191, 2005 WL 102966, at *7 (D. Mass. Jan. 18, 2005) ("defendants… describ[e] the plaintiffs

offerings as 'conclusory assertions.' … The defendants, in essence, are contesting the inferences to

be drawn from the circumstances and events described by the plaintiffs.");  *Schaffner v. Barnhart*,

No. 03-266-P-S, 2004 WL 1941344, *4 (D. Me. Aug. 31, 2004) (rejecting similar argument);

*Torres Ocasio v. Melendez,* 283 F. Supp. 2d 505, 516 (D.P.R. 2003) (rejecting similar argument).

Thus, "[w]hile defendants may prefer highly detailed factual allegations, a generalized statement of

facts is adequate so long as it gives the defendant sufficient notice to file a responsive pleading."

*Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 72-73 (1st Cir. 2000).

     Regardless, the Complaint would satisfy even the common-law pleading rules Defendants

seek to resurrect.  Defendants ask the Court to ignore, as "conclusory," Plaintiffs' allegations that

section 654 "serves no legitimate government or military interest," (Compl. ¶ 4), that Congress's

---

[4]     *See also United States v. Employing Plasterers Ass'n*, 347 U.S. 186, 188 (1954) ("Whether these charges [in a complaint] be called 'allegations of fact' or 'mere conclusions of the pleader,' we hold that they must be taken into account in deciding whether the [plaintiff] is entitled to have its case tried."); *Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (9th Cir. 2004) (*Swierkiewicz* showed a "willingness to allow lawsuits based on conclusory allegations of discrimination to go forward") (citation and internal punctuation omitted); *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002) (Posner, J.) ("[a] complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts.").

"findings" were "unsupported by the evidence before Congress," (Compl. ¶ 43), and that "[t]he presence of gay, lesbian, and bisexual service members in the military has not hurt military operations, impaired discipline, or posed a risk to unit cohesion," (Compl. ¶ 44) (*see* Reply at 11, 14). All of those allegations were amply supported: Plaintiffs pled that scientific studies support the conclusion that the presence of gay, lesbian, and bisexual service members in the military has not hurt military operations, (Compl. ¶ 45), that Department of Defense reports concluded that the ban was unnecessary (Compl. ¶ 45), that openly gay service members have served without harm to military interests (Compl. ¶ 46), that foreign militaries allow gays and lesbians to serve openly with no harm to military interests (Compl. ¶ 47), that United States service members have served alongside members of those foreign militaries with no harm to military interests (Compl. ¶ 48), that the Department of Defense has relaxed or ignored its ban on gays and lesbians during times of war (Compl. ¶ 49), and that some of the named Plaintiffs were allowed to continue to serve *after* the military became aware of their sexual orientation (*e.g.*, Compl. ¶ 112). Additionally, Plaintiffs detailed how their praiseworthy careers in the military illustrate the lack of rationality behind the policy.

### 6. The Military's Own Application – and, When Expedient, Disregard – of Section 654 Is Relevant to the Required Constitutional Inquiry.

Plaintiffs alleged in great detail how "[t]he experience of the Armed Forces in the eleven years since Congress enacted 10 U.S.C. § 654 has undercut" the asserted justifications for the statute. (Compl. ¶ 46). Specifically, the successful operation of U.S. service members in the presence of known gay, lesbian, and bisexual personnel, as well as the demonstrated pattern of non-enforcement of section 654 when military needs require it, all demonstrate that section 654 does not serve military interests. *Compare Lawrence*, 539 U.S. at 568-69 (nonenforcement of sodomy statutes undermined argument that such statutes were part of "longstanding history in this country") *with* Opp. at 15-16 (outlining allegations concerning nonenforcement of section 654 during times of

conflict) *and* 10 U.S.C. § 654(a)(13) (prohibition on gay service members supposedly a "longstanding element of military law"). Conceding that this Court must accept those pleaded facts as true, Defendants ask this Court to disregard those facts because *Schwartz v. Brodsky*, 265 F. Supp. 2d 130, 133 (D. Mass. 2003), observed that "the governmental interest in a piece of legislation is necessarily fixed at the time of its passage." (Reply at 12.) This argument is wrong.

*Schwartz* only emphasizes why Plaintiffs here have stated a claim. The question in *Schwartz* was whether plaintiffs had stated a claim that the Military Selective Service Act was unconstitutional for limiting registration to men in light of the Supreme Court's earlier decision in *Rostker v. Goldberg*, 453 U.S. 57 (1981)). The court said that it "view[ed] the *Rostker* decision as resting on two key factual underpinnings, at least one of which plaintiffs would have to show had changed in order to prevail." *Schwartz*, 265 F. Supp. 2d at 132. The court dismissed the complaint because plaintiffs had not "plead[ed] any facts that would lead to a . . . conclusion" that at the time of decision either (*i*) the Act did not serve the government interest of facilitating a draft of combat troops, or (*ii*) women were eligible for combat. *Id.* at 133. But the clear implication was that the result would have been different had the plaintiffs "plead[ed] facts" supporting the conclusion that the statute no longer served the requisite interests 20 years later. Here, by contrast, Plaintiffs have pleaded ample facts that section 654 does not (and never has) served its stated interests *and* that each of the Plaintiffs was otherwise amply suitable for military service.

*Schwartz* therefore does not support Defendants' proposition that a statute's constitutionality can be determined only at the moment of its passage. If this were true, a statute that continuously infringed citizens' liberty interests would forever remain constitutional if at the time of passage it served the required government interest – even if that interest is no longer compelling/important/legitimate or served. Indeed, rather than address Plaintiffs' allegations concerning the factual underpinnings of section 654, Defendants ask this Court to enclose section

12

654 in a time capsule such that the actual application of section 654 could not be used to assess its

constitutionality.  This approach is plainly contrary to that employed by the Supreme Court time

after time.  *See, e.g.*, *Grutter v. Bollinger*, 539 U.S. 306, 343 (2003) ("We expect that 25 years from

now, the use of racial preferences will no longer be necessary to further the interest approved

today."); *United States v. Virginia*, 518 U.S. 515, 544-45 (1996) (using evidence of modern practice

in evaluating the constitutionality of a state-run military academy's 157-year-old policy of excluding

women).

### 7.    Plaintiffs Have Stated a Claim for Violation of the First Amendment That Does Not Require Exhaustion of Administrative Procedures.

Defendants do not dispute that section 654 prohibits the speech of soldiers on the basis of its

content and viewpoint, silencing them in their private civilian lives as surely as it silences them

during active duty.  Nor do Defendants dispute that section 654 effectively compels gay soldiers to

affirm a false identity by pretending to be straight.  They do not dispute these facts because they

cannot – the facts are the simple truth of how "Don't Ask, Don't Tell" operates.  Instead,

Defendants avoid the issue by raising spurious arguments about "rebuttable presumptions" and

"exhaustion" requirements.  These arguments are a diversion.

Plaintiffs' Complaint establishes that section 654 discriminates against speech based on its

substantive content, so section 654 is "presumptively invalid."  (Opp. at 26 (citing *R.A.V. v. City of*

*St. Paul*, 505 U.S. 377, 382 (1992)).)  Even if section 654(b)(2) did offer a "rebuttable

presumption," that establishes only that section 654 prefers some types of substantive content more

than others – hardly a saving grace.  Any "rebuttable presumption," *even if rebutted,* would still

force Plaintiffs and other gay and lesbian service members to live in an environment that severely

restricts and chills constitutionally protected speech.

As Defendants seem to acknowledge, their "rebuttable presumption" argument is especially

weak when raised against Plaintiffs' as-applied claims.  Plaintiffs are "homosexual" within the

meaning of section 654(f)(1), and therefore cannot prove that they are not "homosexual" as section 654(b)(2) effectively requires. (Compl. ¶ 53.) Rather than respond to Plaintiffs' demonstration that section 654(b)(2) is a "dead letter in practice," (Opp. at 29), Defendants raise a procedural argument. Defendants argue that Plaintiffs' as-applied challenges to section 654 should have been brought under the Administrative Procedures Act, 5 U.S.C. § 701 et seq. ("APA"). (Reply at 14.) That is plainly false. If Plaintiffs were arguing that they *met* the "rebuttable presumption," Defendants' argument would at least be colorable. But Plaintiffs argue that for them there is no rebuttable presumption, and that section 654 unconstitutionally violates the First Amendment. That constitutional argument need not be raised administratively. "Constitutional questions obviously are unsuited to resolution in administrative hearing procedures" and "when constitutional questions are in issue, the availability of judicial review is presumed." *Califano v. Saunders*, 430 U.S. 99, 109 (1977). As the Second Circuit held in an old section 654 case, "because none of the administrative boards before which the plaintiffs would appear has the power to declare the Act unconstitutional, there is no realistic possibility that such proceedings would result in anything other than the plaintiffs' discharge." *Able v. United States,* 88 F.3d 1280, 1289 (2d Cir. 1996); *see also Meinhold v. United States Dep't of Defense*, 34 F.3d 1469, 1474 (9th Cir. 1994) ("exhaustion is not required where an administrative appeal would be futile"); *Watson v. Perry*, 918 F. Supp. 1403, 1411 (W.D. Wash. 1996), *aff'd* 124 F.3d 1126, *rehearing denied* 155 F.3d 1049, *cert. denied* 119 S.Ct. 794 (concluding that the APA did not preclude the district court's constitutional review of section 654 in a case where the plaintiff challenged his discharge without first exhausting non-mandatory intramilitary remedies); *Steffan v. Cheney*, 733 F. Supp. 115, 119-120 (D.D.C. 1989) (exhaustion not required because administrative body is "not empowered to change the Naval regulations excluding homosexuals … or exempt plaintiff from those regulations…[and] does not have the power to grant adequate relief"); *cf. Becker v. Federal Election Comm'n*, 112 F. Supp. 2d

14

172, 177 (D. Mass. 2000) (exhaustion of administrative remedies was not required in a challenge to

Federal Election Commission regulations because it was highly unlikely that the FEC would revoke

its twenty-year old regulation and had consistently maintained its validity).

"Don't Ask, Don't Tell" forces gay and lesbian soldiers to remain silent about who they are

at all times and in all places – even in their private civilian lives – and instead to live a lie by

pretending to be straight.  No court would ever doubt the offense to the First Amendment if the

military were to impose such a complete restriction on speech about religious or political identity.

As *Lawrence* made clear, gay Americans are equally entitled to be treated with dignity and respect.

## CONCLUSION

For the foregoing reasons, and for the reasons given in Plaintiffs' opposition brief, the Court

should deny Defendants' motion to dismiss.

Respectfully submitted,

PLAINTIFFS

Thomas Cook; Megan Dresch; Laura
Galaburda; Jack Glover; David Hall; Monica
Hill; Jenny Lynn Kopfstein; Jennifer McGinn;
Justin Peacock; James E. Pietrangelo II; Derek
Sparks; Stacy Vasquez,

By:  _/s/  Matthew A. Stowe_____
Jonathan A. Shapiro (BBO #567838)
Maura T. Healey (BBO #640856)
Matthew A. Stowe (BBO #650473)
Louis W. Tompros (BBO #657791)
WILMER CUTLER PICKERING
        HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000
(617) 526-5000 (Fax)

15

Sharra E. Greer                              Stuart F. Delery
Kathi S. Westcott                            Alison J. Nathan
Sharon E. Debbage Alexander                  WILMER CUTLER PICKERING
SERVICEMEMBERS LEGAL DEFENSE NETWORK             HALE AND DORR LLP
P.O. Box 65301                               2445 M Street NW
Washington, DC  20035                        Washington, DC  20037
(202) 328-3244                               (202) 663-6000
(202) 797-1635 (Fax)                         (202) 663-6363 (Fax)

Dated: May 3, 2005