UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THOMAS COOK; MEGAN DRESCH; LAURA GALABURDA; JACK GLOVER; DAVID HALL; MONICA HILL; JENNY LYNN KOPFSTEIN; JENNIFER McGINN; JUSTIN PEACOCK; JAMES E. PIETRANGELO II; DEREK SPARKS; STACY VASQUEZ, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD H. RUMSFELD, Secretary of Defense; MICHAEL CHERTOFF, Secretary of Homeland Security; UNITED STATES OF AMERICA, <br><br> Defendants. | Civil Action No. 04-12546 GAO |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFF JAMES E. PIETRANGELO, II'S MOTION FOR RECONSIDERATION**

Defendants Donald H. Rumsfeld, Secretary of Defense; Michael Chertoff, Secretary of Homeland Security; and the United States of America, hereby file this opposition to the Motion for Reconsideration filed by Plaintiff James E. Pietrangelo, II. As we show below, because none of the arguments raised by Mr. Pietrangelo in his Motion for Reconsideration was presented in the underlying proceedings, those arguments are not the proper subject of a post-relief motion to alter or amend the judgment. Regardless, each of these arguments lacks merit. Mr. Pietrangelo's Motion for Reconsideration, consequently, should be denied.

**1.** As a preliminary matter, we note that the Federal Rules of Civil Procedure do not expressly recognize post-judgment motions for reconsideration. See Storie v. Household Int'l, Inc.,

2005 WL 3728718, * 1 n.1 (D. Mass. 2005) (citing, e.g., Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir.1991)). Because Mr. Pietrangelo's appeal rights are potentially implicated by this question, it is necessary to determine whether his motion is properly construed as a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e), or a motion for relief from judgment under Fed. R. Civ. P. 60(b). See Storie, 2005 WL 3728718, * 1 n.1.

Rule 59(e) provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." This Court entered judgment in favor of defendants on April 24, 2006, and Mr. Pietrangelo therefore had until May 8, 2006, in which to file a timely Rule 59(e) motion. See Fed. R. Civ. P. 6(a) (providing that, when the period of time prescribed under a Rule is less than 11 days, intermediate Saturdays, Sundays, and legal holidays are excluded from the computation). Mr. Pietrangelo filed his motion for reconsideration on May 4, 2006, and therefore it was timely under Rule 59(e). Because Mr. Pietrangelo's motion for reconsideration was filed within 10 days after entry of judgment, it is properly construed as a motion to alter or amend under Rule 59(e). See, e.g., Jackson v. Albany Appeal Bureau Unit, 442 F.3d 51, 53 n.1 (2d Cir. 2006); Storie, 2005 WL 3728718, * 3.

2. "Under Fed.R.Civ.P. 59(e), a court may alter or amend a judgment based on a 'manifest error of law or fact' or newly discovered evidence." Zukowski v. St. Lukes Home Care Program, 326 F.3d 278, 282 n.3 (1st Cir. 2003) (quoting Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997) (internal quotation and citation omitted)). "It is well-settled, however, that new legal arguments or evidence may not be presented via Rule 59(e); rather, motions under that rule must either clearly establish a manifest error of law or present newly discovered evidence." Landrau-Romero v. Banco Popular de Puerto Rico, 212 F.3d 607, 612 (1st Cir. 2000). The prohibition

against allowing new arguments in a Rule 59(e) motion is particularly apt here, given that the representation by counsel for Plaintiffs in the underlying proceedings was of the highest order. Here, each of the arguments advanced by Mr. Pietrangelo constitutes new arguments that are not the proper subject of a Rule 59(e) motion, and in any event lack merit.

**3.** Mr. Pietrangelo first contends (Motion at 2-14) that this Court's decision "endorses blatant wrongful discrimination," and analogizes § 654 to the legal standing of African-Americans prior to Brown v. Board of Education, 347 U.S. 483 (1954). To begin with, this argument was not advanced by Plaintiffs in the underlying proceedings, and therefore is not the proper subject of a Rule 59(e) motion. See Landrau-Romero, 212 F.3d at 612. Plaintiffs neither cited to Brown nor to Plessy v. Ferguson, 163 U.S. 537 (1896), in their pleadings in opposition to the government's motion to dismiss, nor did they contend that § 654 was comparable to the legal status of African-Americans in the Armed Forces prior to integration.

Even if this argument had been presented below, it lacks force. The Senate Armed Services Committee expressly considered and rejected the analogy between the rationales offered for the policy with the opposition to racial integration in the Armed Forces after World War II. Specifically, the Senate Armed Services Committee reasoned that:

> One of the arguments advanced in favor of lifting the restrictions against the service of gays and lesbians in the armed forces is that the current ban is simply the product of prejudice, similar to the prejudice involved in opposition to racial integration of the armed forces after World War II.
>
> This issue was eloquently addressed by General Colin Powell, Chairman of the Joint Chiefs of Staff, in a letter dated May 8, 1992 to Representative Patricia Schroeder:
>
>> I am well aware of the attempts to draw parallels [to] the positions used years ago to deny opportunities to African-Americans. * * * I need no reminders concerning the history of African-Americans in the

> defense of their Nation and the tribulations they faced. I am a part of that history.
>
> Skin color is a benign, non-behavioral characteristic. Sexual orientation is perhaps the most profound of human characteristics. Comparison of the two is a convenient but invalid argument. I believe the privacy rights of all Americans in uniform have to be considered, especially since those rights are often infringed upon by the conditions of military service.

> The committee notes that opposition to racial integration in the post-World War II period included stereotypes attributing behavior deficiencies to African-Americans. The committee also notes that there is prejudice based upon stereotypes against gays and lesbians in American society. The committee emphasizes, however, that its position on the service of gays and lesbians is not based upon stereotypes, but upon the impact in the military setting of the conduct that is an integral element of homosexuality.

Senate Report No. 112, 103d Cong., 1st Sess. 269, 282 (1993) ("S. Rep. 112"). Senator Nunn also emphasized during the Senate debate that then-General Powell had "clearly distinguished the issues raised by homosexuality from the issues raised by racial or sexual prejudice," and that the Senate Armed Services Committee had credited that judgment. See 139 Cong. Rec. S1117 (Sept. 9, 1993) (statement of Sen. Nunn). So, too, have the courts. See, e.g., Richenberg v. Perry, 97 F.3d 256, 261 & n.7 (8th Cir. 1996) (rejecting "Richenberg's strident attack on the military for catering to prejudice against those with homosexual orientation," and crediting then-General Powell's testimony that comparison of the status of gays and lesbians and African-Americans in the Armed Forces "is a convenient but invalid argument"), *cert. denied*, 522 U.S. 807 (1997). Even Dr. Lawrence J. Korb, who testified against the policy before the Senate Armed Services Committee, rejected this analogy. See *Policy Concerning Homosexuality in the Armed Forces: Hearings Before the Senate Comm. on Armed Services*, 103d Cong., 2d Sess. at 257 (1993) (testimony of Dr. Korb) ("I agree with those

who say that it is an affront to African Americans to make direct comparisons between the two."). Hence, Mr. Pietrangelo's assignment of error on this ground lacks foundation.

**4.** Mr. Pietrangelo next contends (Motion at 14-20) that this Court "totally missed" one of Plaintiffs' equal protection claims; namely, that the operation or application of § 654 constitutes arbitrary government action. Once again, this argument was not advanced by Plaintiffs in the underlying proceedings, and therefore is not the proper subject of a Rule 59(e) motion. See Landrau-Romero, 212 F.3d at 612. Indeed, to the extent Mr. Pietrangelo is challenging the military's application of the policy as arbitrary and capricious, that is a claim that would arise under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701-706. See, e.g., Richenberg, 97 F.3d at 263-64; Thomasson v. Perry, 80 F.3d 915, 934 (4th Cir.) (en banc), *cert. denied*, 519 U.S. 948 (1996). But Plaintiffs did not plead a cause of action under the APA in their Complaint. Consequently, Mr. Pietrangelo's contention that this Court erred by failing to consider this claim is incorrect.

**5.** Mr. Pietrangelo lastly contends (Motion at 20) that this Court "completely missed" Plaintiffs' other First Amendment claim; namely, that § 654 "is really and substantially overbroad and chills a whole range of protected speech that is unrelated to even the military's stated objective of maintaining unit cohesion." Here, once again, this argument was not advanced by Plaintiffs in the underlying proceedings, and therefore is not the proper subject of a Rule 59(e) motion. See Landrau-Romero, 212 F.3d at 612.

And, even if this argument had been presented below, it too lacks force. Mr. Pietrangelo's argument fails to take proper account of the Supreme Court's decision in Parker v. Levy, 417 U.S. 733 (1974), in which the Court rejected both vagueness and overbreadth challenges to provisions of the Uniform Code of Military Justice, noting that "Congress is permitted to legislate both with

greater breadth and with greater flexibility" when the statute governs military society, and that "[w]hile the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections." Id. at 756, 758.

Moreover, Mr. Pietrangelo's argument ignores that, because it is legitimate for Congress to proscribe homosexual acts in the Armed Forces, it follows that it is legitimate for the government to seek to forestall these same dangers by trying to *prevent* the commission of such acts. See Thomasson, 80 F.3d at 929-30 (citing cases). The statute therefore reasonably provides that a member's statement that he or she is a gay or lesbian establishes a rebuttable presumption that the member has a propensity to engage in homosexual acts, unless the member demonstrates that he or she does not engage in, and is not likely to engage in, homosexual acts. See 10 U.S.C. § 654(b)(2); DoDD 1332.14 ¶ E3.A1.1.8.1.2.2, at 27; DoDI 1332.40 ¶ E2.3.1.2, at 10. In other words, such a statement may lead to discharge, "not because it reflects the member's sexual orientation," but because "the statement indicates a likelihood that the member engages in or will engage in homosexual acts." DoDD 1332.14 ¶ E3.A1.1.8.1.1, at 26; DoDI 1332.40 ¶ E2.3, at 9. As the Senate Armed Services Committee found, it is reasonable for the military to presume that, when a service member makes a statement that he or she is a gay or lesbian, that member engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts. See S. Rep. 112, at 294.

Hence, as the Ninth Circuit has explained, a discharge of a service member is not based solely on a statement that the member is gay or lesbian, it is based on that statement **plus** the member's failure to rebut the presumption that he or she is likely to engage in homosexual acts. See

Holmes v. California Army Nat'l Guard, 124 F.3d 1126, 1135 (9th Cir. 1997), *cert. denied*, 525 U.S. 1067 (1999); see also Thomasson, 80 F.3d at 934 (Murnaghan, J., concurring) ("The case concerns a rebuttable presumption which Thomasson did not rebut.  Whether the employer was a military or nonmilitary body, it is enough that the presumption used is rational and thus constitutional.").  As the en banc Fourth Circuit has explained, "[s]ervice members who state that they are homosexual can avoid separation by rebutting the presumption that they have a propensity or intent to engage in homosexual acts."  Thomasson, 80 F.3d at 932.

Thus, a service member who states that he or she is a homosexual is not required to disprove his sexual orientation; rather, the member must show that he or she does not engage in, and is not likely to engage in, homosexual acts.  See Holmes, 124 F.3d at 1135 ("Thus, under the statements prong of the 'don't ask/don't tell' policy, service members are not discharged for having a homosexual 'status.'  The discharges result because of actual conduct or a propensity for conduct that is prohibited.").  The retention of service members who rebut the presumption that they engage in, or are likely to engage in, homosexual acts is dispositive evidence that the policy does not target speech or the response of service members to speech, and is not overbroad or unconstitutionally vague.

## CONCLUSION

For the foregoing reasons, Mr. Pietrangelo's Motion for Reconsideration should be denied..

                    Respectfully submitted,

                    MICHAEL J. SULLIVAN
                    United States Attorney

By: /s/ Mark T. Quinlivan
      MARK T. QUINLIVAN
      Assistant United States Attorney
      United States Attorney's Office
      John Joseph Moakley U.S. Courthouse
      1 Courthouse Way, Suite 9200
      Boston, MA 02210
      617-748-3606

Dated: May 18, 2006

## CERTIFICATE OF SERVICE

     I hereby certify that, on May 18, 2006, this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and a paper copy will be sent to Plaintiff James E. Pietrangelo, II, at the following address: P.O. Box 9231, South Burlington, VT 05407.

                    /s/ Mark T. Quinlivan
                    MARK T. QUINLIVAN
                    Assistant United States Attorney